# LOGANSPORT & WABASH VALLEY GAS COMPANY *v.* NULL.

[No. 5,476. Filed November 14, 1905.]

CONTRACTS.—*Oil and Gas Leases.*—*Conditions.*—Where plaintiff executed a contract with defendant's assignors conveying to such assignors all of the oil and gas under his land on terms providing that the grantees should drill a well within three months or pay an annual rental of $75 for delay in so drilling, a failure to pay which when due rendering such contract "null and void," and the defendant made two payments at each of which times plaintiff made a demand for the drilling of a well, and the third payment was not tendered when due, such contract was void, there having been no entry by defendant, and plaintiff having never parted with the possession.

From Grant Circuit Court; *H. J. Paulus,* Judge.

Suit by John H. Null against the Logansport and Wabash Valley Gas Company. From a decree for plaintiff, defendant appeals. *Affirmed.*

*Blacklidge, Shirley & Wolf,* for appellant.
*Strange & Charles,* for appellee.

BLACK, J.—The appellee brought suit to quiet his title to 100 acres of land; the complaint being in the short form ordinarily adopted in such cases. The appellant answered by general denial. The only matter presented here relates to the question whether the evidence was sufficient to sustain the finding of the court in favor of the appellee. The appellee being the owner of the tract here involved, and his wife being the owner of a certain other tract of fifty acres,

they united, January 5, 1899, in the execution to appellant's assignors of a contract, which was properly acknowledged and duly recorded, the terms of which, so far as they need be recited, were as follows: "In consideration of the sum of $1 and the covenants and agreements hereinafter contained," the appellee and wife, "first part, hereby grant and convey unto" the appellant's assignors, "second part, heirs or assigns, all the oil and gas in and under the following described premises, together with the exclusive right to enter thereon at all times for the purpose of drilling or operating for oil, gas or water, to erect, maintain and remove all buildings, structures, pipes, pipe-lines and machinery necessary for the production, storage and transportation of oil, gas or water; providing that the first part shall have the right to use said premises for farming purposes (except such part as is actually occupied by second part), namely," etc., describing the lands. "The above grant is made upon the following terms: Second part agrees to drill a well upon said premises within three months from this date, or thereafter pay the first part for further delay a yearly rental of $75 until said well is drilled. Such rentals, when due, shall be deposited in the Marion Bank, at Marion, Grant county, State of Indiana. Should second part refuse to make such deposits or pay to first part on these premises, or at present residence of first part, said rental, when due aforesaid, such refusal shall be construed by both parties hereto as the act of second part for the purpose of surrendering the rights hereby granted, and this instrument, in default of the rental payments, shall be null and void without further notice from second part." Provisions were made concerning the rights and obligations of the parties if oil, in paying quantities, or gas should be found. It was also provided that "second party may at any time reconvey this grant, and thereupon this instrument shall be null and void." The parties of the

second part assigned all their right, title, interest and claim under this grant to the appellant, by a written instrument duly recorded.

It is admitted on behalf of the appellant that the evidence sufficiently showed the title of the appellee, and that the appellant was claiming an interest in the land under the oil and gas contract; but it is contended that the evidence does not sufficiently show that such claim of interest was without right and unfounded. No well was made, and there was no attempt to develop the land for oil or gas, and the party of the second part or the appellant never entered on the land or took possession of it. Nothing was paid at the execution of the contract. The appellee received from the appellant the first payment of money under the contract on or about April 5, 1900, one year and three months after its date, the sum then paid being $75, the amount stipulated to be paid as "yearly rental" for further delay after the expiration of three months without the drilling of a well. The next payment was made on or before April 5, 1901. This payment was made and accepted to pay up to July 1, 1901, the amount of the payment being $92.50, the rent thereafter to be paid annually from the 1st of July. No other money was ever paid to the appellee or to any one on his behalf or on his wife's behalf, under this contract. No tender of payment to him or his wife, under the contract, was made on or about July 1, 1902; and no such payments were deposited in the Marion Bank to the appellee's credit on or before that date. When receiving the payment on or about April 5, 1900, the appellee on behalf of himself and his wife made demand of the appellant for the development of the land. Like demand was made when the payment was made on or about April 5, 1901. The appellee, who was the only witness on the trial, was asked on cross-examination: "Were you tendered any money after that at all by the defendant, or their agent, after you received

that payment on or about April 5, 1901? Were you tendered any more after that? A. Yes, I was tendered money on the 7th of July, 1902." He testified that he was tendered $75 by a certain agent of the appellant, who tendered it on the lease, as gas-lease rental to cover both pieces of real estate; and that he refused to receive it. ·

The oil and gas contract purported in its beginning to be an absolute grant of all such substances in the land, with the exclusive right to enter upon the land at all times for the purpose of operating therefor, no period ·of time being prescribed for the continuance of the rights so granted. It was then provided that this grant was made upon the terms which thereafter followed. The word "terms" in such connection was broad enough in meaning to include considerations or conditions. One of the terms was that the grantees agreed to drill a well within three months from January 5, 1899, or thereafter to pay the grantors for further delay a certain amount in money annually, "a yearly rental * * * until said well is drilled." Such yearly payments "when due" were to be deposited in a certain bank; but if the grantee should refuse to make such deposits or to pay the grantors at places designated the rental "when due," such refusal was to be construed by both parties as the act of the grantee for the purpose of surrendering the rights granted; and in default of the rental payments the contract was to be null and void, without further notice from the grantee. The payment of rentals yearly was put as an alternative equivalent to the drilling of a well; but it was in effect provided that the grantee might surrender the grant at his own choice by his failure to pay the rental when due, and that in case of failure to pay when due, the grant, thereupon, without other notice from the grantee than such failure, should be null and void; and it was further provided that the grantee "at any time" might reconvey and thereby might render the grant void.

It seems to have been intended to relieve the grantee from any enforcible obligation to develop the territory or to pay for failure to do so; after making one or more payments, it was not obliged to make other payments, though it should fail to drill a well. If up to the time when the third payment by the terms of the instrument was "due" there were any mutual rights and obligations under the contract, the failure shown by the evidence to make that payment when due was a circumstance which by those terms was to render the grant void. There had been no entry under the grant. The grantor had never parted with possession, and it was not necessary for him to make an impossible reëntry. He was under no obligation to accept the tendered rental after the date when it became due, if at any time, and his refusal to accept it was a sufficient declaration of his purpose to regard the grant as void.

Judgment affirmed.