. LINDLAY et al. v. RAYDURE.

(District Court, E. D. Kentucky. February 3, 1917.)

1. COURTS ⬤367—RULES OF DECISION—OIL AND GAS LEASE.
   The validity of an oil and gas lease, which the lessee could surrender at his option, is a local question, the decision of which by the court of the state in which the land is located is binding on the federal court.
   [Ed. Note.—For other cases, see Courts, Cent. Dig. §§ 958, 959.]

2. MINES AND MINERALS ⬤73—OIL AND GAS LEASE—ESTATES CREATED.
   An oil and gas lease, purporting to convey to the lessee all the oil and gas in the land, and leasing the land to him to drill and operate wells for a specified term and so long thereafter as oil or gas was produced in paying quantities thereon, does not convey a vested interest in the oil and gas, since there can be no ownership of them until they have been reduced to possession, but does convey a vested interest in the right to explore for oil and gas, or an interest in those minerals contingent on their discovery and reduction to possession, and such lease is therefore not executory, but is executed as much as any other lease.
   [Ed. Note.—For other cases, see Mines and Minerals, Cent. Dig. §§ 201, 210.]

---

⬤For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

3. MINES AND MINERALS ☞58—OIL AND GAS LEASE—CONSIDERATION—ADE-
QUACY.

A consideration of $1 is sufficient to support an oil and gas lease by the terms of which the lessee's interest is subject to defeasance for breach of condition subsequent to drill wells and pay royalties, though he is not bound by any covenant to perform the condition.

[Ed. Note.—For other cases, see Mines and Minerals, Cent. Dig. §§ 168, 169.]

4. MINES AND MINERALS ☞58—OIL AND GAS LEASE—CONSIDERATION—CLAUS-
ES SUPPORTED.

In an oil and gas lease, given for the consideration of $1, which provided that the lessee should drill a test well within one year and should pay a specified sum per year for the time during which the completion of the well was delayed, the consideration supports, not only the right to drill the well during the first year, but also the privilege of paying the specified 'sum and securing a renewal of the right, so that the right to make such payment and secure the renewal is not dependent on a subsequent agreement by the lessee to make the payment.

[Ed. Note.—For other cases, see Mines and Minerals, Cent. Dig. §§ 168, 169.]

5. EVIDENCE ☞432—PAROL EVIDENCE—CONTRADICTING RECITAL—PAYMENT
OF CONSIDERATION.

Parol evidence is not admissible, even in equity, to show that the consideration of $1, which the lease recited had been paid, was not in fact paid.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 1981–1989.]

6. MINES AND MINERALS ☞81—OIL AND GAS LEASE—REMEDY OF LESSEE—IN-
JUNCTION.

A suit by the lessee under an oil and gas lease to enjoin the removal of oil and gas from the premises by a subsequent lessee is a suit to prevent trespass and waste to the interest of the lessee, not for specific performance of the lease, and therefore the doctrines that equity will not specifically enforce a contract where there is no mutuality of rights and remedies, nor if the consideration was inadequate, or it was unfair to hold the party to it, do not apply.

[Ed. Note.—For other cases, see Mines and Minerals, Cent. Dig. § 211.]

7. MINES AND MINERALS ☞81—OIL AND GAS LEASE—REMEDY OF LESSEE—IN-
JUNCTION—ADEQUATE REMEDY AT LAW.

A lessee under an oil and gas lease has no adequate remedy at law, which deprives him of his right to enjoin a subsequent lessee from removing the oil and gas.

[Ed. Note.—For other cases, see Mines and Minerals, Cent. Dig. § 211.]

8. MINES AND MINERALS ☞81—OIL AND GAS LEASE—REMEDY OF LESSEE—IN-
JUNCTION—ADEQUACY OF CONSIDERATION.

The right of the lessee under an oil and gas lease to enjoin the removal of those minerals by a subsequent lessee is not affected by the inadequacy of the consideration for the lease.

[Ed. Note.—For other cases, see Mines and Minerals, Cent. Dig. § 211.]

9. MINES AND MINERALS ☞58—OIL AND GAS LEASE—VALIDITY—MUTUALITY.

The rule that unperformed contracts, optional as to one party, are optional as to both, applies only to a contract which is wholly executory, in that it consists of mutual promises, each the consideration of the other, but does not apply where a consideration is paid for an oil and gas lease, which gives the lessee a present interest in the right to explore for the

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes
239 F.—59

mineral and a contingent interest in the minerals discovered, though he has the privilege of surrendering the lease at any time.

[Ed. Note.—For other cases, see Mines and Minerals, Cent. Dig. §§ 168, 169.]

10. **MINES AND MINERALS ⊕⇒73½—OIL AND GAS LEASE—PERIOD OF TENANCY.**

The lessee under an oil and gas lease for the term of 10 years, and as much longer as oil and gas should be produced in paying quantities, with right to surrender the lease and be discharged from liability thereon, the consideration for which lease had been paid, was not a tenant at will, so that the doctrine that a tenancy at will of one party is at the will of the other does not apply.

[Ed. Note.—For other cases, see Mines and Minerals, Cent. Dig. § 200.]

11. **MINES AND MINERALS ⊕⇒58—OIL AND GAS LEASE—VALIDITY—SURRENDER CLAUSE.**

In an oil and gas lease, granting for the consideration of $1, paid by the lessee, the right to drill and operate wells and the right to the oil and gas discovered thereon, subject to a payment of royalty, a clause authorizing the lessee at any time to surrender the lease and be relieved from all liability thereon does not invalidate the lease as a matter of principle, nor according to the weight of authority or the decisions of the courts of Kentucky, where the land was situated.

[Ed. Note.—For other cases, see Mines and Minerals, Cent. Dig. §§ 168, 169.]

12. **COURTS ⊕⇒365—RULES OF DECISION—DECISION OF STATE COURT—SCOPE.**

A decision of the state court that $1 is such an inadequate consideration for an option to purchase real estate as to invalidate the option does not require the holding that a similar consideration is not sufficient to support an oil and gas lease, under which the lessee must expend a considerable sum of money, which will be a loss in the event of failure to discover oil.

[Ed. Note.—For other cases, see Courts, Cent. Dig. §§ 950, 952, 955, 969–971.]

In Equity. Suit by John W. Lindlay and others against W. S. Raydure. On final hearing. Decree for plaintiffs.

Burnam & Burnam, of Richmond, Ky., and R. W. Smith, of Irvine, Ky., for plaintiffs.

Hugh Riddell, of Irvine, Ky., and Frank A. Baldwin, of Bowling Green, Ohio, for defendant.

COCHRAN, District Judge. This cause is before me for final decree. It involves a controversy between holders of rival oil and gas leases. Thomas Tipton and George Pitts owned adjoining farms in Estill county, Ky., within this district, the one containing 185 acres and the other 75 acres. Each executed—the one on May 20, 1915, his wife uniting with him, and the other on May 22, 1915, he then being a widower—such a lease on his farm to the plaintiff Harvey Huntsman, who subsequently assigned three-fourths thereof to his coplaintiffs, one-fourth to each. The Tipton lease was lodged for record November 12, 1915, and the Pitts November 10, 1915. The two leases were alike, save in the one particular, hereafter indicated. Each recited, as the consideration therefor, payment of $1, receipt of which was acknowledged, and the covenants and agreements on the part of Huntsman therein contained, purported to grant and convey all of

⊕⇒For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

the oil and gas in the land, and demised, leased, and let the land for the purpose and with the exclusive right to enter thereon at all times to drill and operate wells for oil and gas for the term of 10 years, and so long thereafter as oil and gas, or either of them, was produced, except that the lessor was to have 8 per cent. of the oil produced. Huntsman covenanted and agreed to pay $100 per annum for each gas well from which gas was marketed, and to complete a well within one year from the date of the lease, or to pay at the rate, in the Tipton lease of 25 cents, and in the Pitts lease of 10 cents, per acre for each additional year the completion thereof was delayed, payable yearly in advance, until a well was completed or the lease surrendered as therein provided, which payment might be deposited to the lessor's credit in the Farmers' Bank of Irvine, county seat of Estill county. In each it was provided that the completion of the well should be a full liquidation of such rentals during the remainder of the term of the agreements, that Huntsman was to have the privilege at any time of removing all machinery and fixtures, and that upon the payment of $1 at any time he should have the right to surrender the lease for cancellation, after which all payments and liabilities thereafter to accrue thereunder should cease and determine, and it be absolutely null and void. Each contained other provisions usual in such leases, which it is not necessary to set forth.

On October 13, 1915, Tipton and his wife made a lease on his farm similar to that which they had made to Huntsman, except in that Tipton was to have one-eighth of all the oil produced and it contained no surrender clause, which was lodged for record November 17, 1915; and on October 21, 1915, Pitts made a lease on his farm similar to that which he had so made, except in that Huntsman was to pay 25 cents, instead of 10 cents, an acre per annum for delay in completing the test well, which was lodged for record November 15, 1915; each lease being to the defendant Raydure. At the time of making of these leases the year had not elapsed which Huntsman had under his leases to complete a test well and he had not commenced to drill on either farm. Tipton and Pitts made these two leases to Raydure upon his representation that the Huntsman leases were void and upon an agreement on his part to defend against them. Huntsman was then still the sole owner of his leases. He did not assign interests in them to his coplaintiffs until in February and March, 1916. At that time nothing had been done under any of the leases. In April, and in time enough to have completed a test well before May 22, 1916, when the year would expire for completing it under the Pitts lease, plaintiffs selected a site for drilling a test well on the Pitts farm and were in the act of placing a drilling outfit thereon for that purpose, when they were forcibly prevented from so doing by the defendant. They made no attempt to commence drilling such a well on the Tipton farm. They were made to understand that it was not agreeable that they should do so, and that they would be resisted. Before the expiration of the year they tendered Tipton the rental for the succeeding year, which he refused to accept, and they thereupon deposited same to his credit in the prescribed bank. On the other hand, Raydure, before the expiration

of the year under the Huntsman leases, entered upon both farms and has drilled five wells on each, each of which wells is capable of producing 50 barrels of oil per day.

This suit was brought May 15, 1916, and in it plaintiffs seek an injunction against defendant, restraining him from producing oil on or removing it from those farms, and from interfering with their so doing, and judgment against him for $200,000 damages; i. e., $100,000 for each of the wrongs already done. A number of questions bearing on plaintiffs' right to relief have been raised in the case. Two of them pertain to both of the Huntsman leases. One is whether they are invalid because of the surrender clause contained therein. The other is as to whether the defendant had actual notice of them at the time he obtained his leases. They had not been lodged for record at that time. It is essential, therefore, that he should have then had such notice thereof to be affected by them. Two questions have been raised as to the Tipton lease alone. One is as to whether it was acknowledged by Tipton and his wife before a deputy clerk of the Estill county court, as it is certified to have been, and the effect thereof, if it was not. The other is as to whether it was obtained by deception practiced by Huntsman on Tipton and his wife. The agreement was that Tipton was to have one-eighth of the oil produced as royalty. The lease provides that he should have only 8 per cent., and it is in its so providing that it is claimed that deception was so practiced. Huntsman's claim is that it was by mutual mistake that the lease was different in this particular from the agreements. One question has been raised as to the Pitts lease alone, and that is whether he was the owner of the farm covered by it when he leased to Huntsman. It is claimed that the title was then in his granddaughter, Nancy Jones, and her husband, Harvey Jones from whom the defendant obtained a second lease after obtaining the one from George Pitts as hereinbefore stated. I decided all these questions, except the first one, as to the invalidity of both leases because of the surrender clause, against defendant at the hearing and then orally gave my reasons therefor. These will not be repeated here, and the opinion will be limited to the one which was not decided, and which was reserved for further consideration.

[1] The question as to whether the validity of these leases is affected by the surrender clause contained in each of them is a local one. If it has been determined by the Court of Appeals of Kentucky, this court is bound by its decision. There can be no doubt, and the parties are agreed, as to this. Guffey v. Smith, 237 U. S. 101, 113, 35 Sup. Ct. 526, 59 L. Ed. 856. They differ as to what that court has decided in regard thereto. Each side claims that it has decided its way, and that with equal sincerity and cocksureness as to the correctness of its position. Whilst, then, the only question before me is as to what has been thus decided in this particular, there is a right way of approaching that question, and that is from the standpoint, first of personal conviction, and then of authority elsewhere. It has been said by a great biblical scholar of a charming spirit that one cannot attain "to the highest truth or the highest sincerity until he can speak from personal conviction," and that until he can do so he has not yet attained to "the

vérité vraie which is the crowning stage of all." It is from that high standpoint that I would view authority. I proceed first, therefore, to a consideration of the question as to the validity of these leases on principle. What, according to fundamental notions, is the true position in regard thereto?

[2] But before coming to close quarters with this question accurate position should be taken as to certain matters. One of them has to do with an instrument which is unlike those involved here, in that it has no surrender clause, but is otherwise exactly like them. There is no question that such an instrument is valid. Opinion does not differ as to this anywhere. The matter relating thereto which I would develop is as to whether, immediately upon the execution of such an instrument, an estate of any character vests in the lessee. It is certain that none vests in him as to the oil and gas which may be in the land, notwithstanding the instrument in express terms purports to grant and convey them. This follows from the consideration that the lessor himself has no estate therein; and this is so because of the fugacious nature of such substances. That he has no estate therein is thus put by the Supreme Court, through Mr. Justice White, in the case of Ohio Oil Co. v. Indiana, 177 U. S. 190, 208, 20 Sup. Ct. 576, 583 (44 L. Ed. 729):

"Although in virtue of his proprietorship the owner of the surface may bore wells for the purpose of extracting natural gas and oil, until these substances are actually reduced by him to possession, he has no title whatever to them as owner; that is, he has the exclusive right on his own land to seek to acquire them, but they do not become his property until the effort has resulted in dominion and control by actual possession."

It is equally certain that an estate of some character does then vest in him in the surface; i. e., the rest of the land. The owner thereof by virtue of his proprietorship, as so stated, has the exclusive right thereon to seek to acquire such substances. This right may be resolved into two successive rights; i. e., to explore therefor by drilling wells, and then, if discovered, to produce them. It is on their production that they become his. Having such right, he can transfer it, and immediately upon the execution of the transfer an estate in the land vests in the person to whom it is made, at least so far as the right to explore is concerned. Such a transfer is effected by such an instrument as I am dealing with. It in express terms demises, leases, and lets the land for the purpose and with the exclusive right to drill wells and to produce oil and gas. In Archer's Oil & Gas Cases, p. 20, this proposition is stated as a true generalization of numerous cases cited, to wit:

"A grant of the exclusive privilege to go on land for the purpose of prospecting for oil and gas is, until oil or gas is discovered in paying quantities, merely a license, and does not vest in the grantee any estate in the surface of the land or the minerals therein; but where by such a grant the land is granted with such exclusive privilege, it is a lease conveying an interest in the land, and not merely a license to enter and explore for oil or gas."

The appellate court of this circuit, through Judge Day, in the case of Allegheny Oil Co. v. Snyder, 106 Fed. 764, 766, 45 C. C. A. 604, which involved a lease which granted and demised land for such pur-

pose and with such exclusive right for the term of 2 years and as long thereafter as oil or gas were found in paying quantities, not exceeding in the whole 25 years, quoted with approval from the opinion in the case of Harris v. Oil Co., 57 Ohio St. 129, 48 N. E. 506, this statement:

"An instrument in such form is more than a mere license; it is a lease of the land for the purpose and period limited therein, and the lessee has a vested right to the possession of the land to the extent reasonably necessary to perform the terms of the instrument on his part."

That an estate in the surface of the land of some character vests in the lessee immediately upon the execution of the instrument I do not understand to be questioned anywhere. Possibly there is some question as to the exact nature of the estate which vests: but otherwise there is none. On the face of things it would seem that at least an estate in possession vests—i. e., an estate for 10 years in which to explore for oil and gas—but that no estate to produce oil and gas then vests. So far the estate is an estate upon condition precedent, the condition being the discovery of oil or gas, and does not vest until the happening of such condition. The estate in possession can, in no event, last longer than 10 years. In the case of Brown v. Fowler, 65 Ohio St. 507, 63 N. E. 76, where the lease was for 2 years and as long thereafter as oil and gas is found in paying quantities, the Supreme Court of Ohio, through Judge Burket, said:

"This clause means that the term of the lease is limited to 2 years, but that if, within the 2 years, oil or gas shall be found, then the lease shall run as much longer thereafter as oil or gas shall be found in paying quantities; but, if no oil or gas shall be found within the 2 years, the lease shall, at the end of the 2 years, terminate, not by forfeiture, but by expiration of term, and after the expiration of the said 2 years no further drilling can be done under the lease."

Possibly it is an estate upon condition subsequent; the condition being the failure to drill the test well or pay the commutation money, notwithstanding there is no express provision to that effect. Possibly the condition includes also the failure to drill a test well after notice upon the part of the lessor so to do, notwithstanding a tender of the commutation money, authority for which may be found in the case of Monarch Oil & Gas Co. v. Richardson, 124 Ky. 602, 99 S. W. 668. It would seem that there was at least an implied condition subsequent to the former extent. Possibly this estate in possession is liable to terminate otherwise short of the 10 years; i. e., by drilling a test well and its proving dry. Possibly, also, the estate upon condition precedent, i. e., to produce oil and gas, is also upon a condition subsequent; i. e., if the condition precedent happens and the estate vests, it is liable to be defeated by failure to produce or deliver or pay the royalties. The necessities of this case do not require that anything further be said as to any of these possibilities. It is sufficient for the purpose thereof that an estate in possession to explore for oil and gas does vest immediately upon the execution of the instrument, and that an estate in the future to produce oil and gas will vest on its

discovery, whatever limitations or qualifications either may be subject to.

In the case of Venture Oil Co. v. Fretts, 152 Pa. 451, 25 Atl. 732, the Supreme Court of Pennsylvania, through Judge Williams, said:

"A vested title cannot ordinarily be lost by abandonment in a less time than that fixed by the statute of limitations, unless there is satisfactory proof of an intention to abandon. An oil lease stands on quite different ground. The title is inchoate, and for purposes of exploration only, until oil is found. If it is not found, no estate vests in the lessee, and his title, whatever it is, ends when the unsuccessful search is abandoned. If oil is found, then the right to produce becomes a vested right, and the lessee will be protected in exercising it in accordance with the terms and conditions of his contract."

Substantially similar statements will be found in other cases involving oil and gas leases. It may create the impression that there is nothing vested until oil or gas is found. Such, however, is not the case, and no such thought was intended to be conveyed. What is inchoate until oil or gas is found is the right to produce oil and gas and the right to the oil and gas itself, which remains inchoate until produced. The right to explore, therefore, is at no time inchoate. It is vested, and will be protected from the time of the execution of the instrument.

If I am correct in this position, so far as the lessee's rights under such an instrument are concerned, there is nothing executory about them, except the entry under the vested right to explore and the vesting of the right to produce and to the substances produced. There is nothing more executory under it than there is under an ordinary deed or lease to land. So far as the right to explore is concerned it is an executed instrument, and it becomes executed as to the right to produce and to the substances produced upon the happening of the conditions on which they are to vest.

[3] The other matters which I would stress in this connection have to do with an instrument in which $1 is the sole consideration therefor. Such is the case if the instrument contains no covenants on the part of the lessee to explore, or to produce, or to deliver, or pay royalties. An instrument can be so worded that these things can be secured to the lessor by a condition subsequent, without any personal covenant on the part of the lessee upon which he would be liable. Those matters having to do with such an instrument are these: The instrument is valid. The payment of the $1 is sufficient consideration to uphold it. That $1 is a sufficient consideration to render valid a contract, executed or executory, is as well settled as can be. The authorities to this effect will be found in the note to the case of Lovett v. Eastern Oil Co., 68 W. Va. 667, 70 S. E. 707, Ann. Cas. 1912B, 360, 363.

In the case of Toncra v. Henderson, 3 Litt. 235, the Kentucky Court of Appeals held that the recital of a consideration of five shillings was sufficient to validate a deed to a stranger. Again, the instrument being valid, estates vest in the lessee just the same as in a case where the instrument contains covenants on the part of the lessee and they constitute a part of the consideration as just indicated. Again, the con-

sideration of $1 for the rights conferred by such an instrument is not so insignificant as it might at first blush appear to be. It is in such a case, not the consideration for an absolute grant, but for a grant on condition subsequent; the condition securing to the lessor the thing which could have been secured by a personal covenant, the condition possibly being the more effective of the two. So far as it is the consideration for the grant of the right to explore, it is for the right to incur the expense of the exploration, which may result in nothing.

In the case of Guffey v. Smith, supra, 237 U. S. 116, 35 Sup. Ct. 530, 59 L. Ed. 856, the Supreme Court, through Mr. Justice Van Devanter, thus expressed itself as to the consideration for the instrument there involved:

"Whether the lease is unfair and inequitable must be determined in view of the circumstances in which it was given. * * * They were these: Whether the leased tract contained oil or gas was not known. It was, in an undeveloped district, in which there was no oil or gas well and no pipe leading to a market. Drilling wells was attended with large expense, the cost of each well being upwards of $1,000, according to the testimony of one of the defendants. No fraud, deception, or overreaching was practiced in procuring the lease. The parties were competent to contract with each other, and entered into the lease because in the circumstances its provisions were satisfactory to them. Under its terms the cost of the drilling was to be borne by the lessee. If the undertaking was unsuccessful, he alone was to stand the loss, and if it was successful the lessor was to share in the results by receiving substantial royalties, the reasonableness of which is not questioned. The consideration for the lease, viz., $1 paid to the lessor and the covenants and agreements of the lessee, cannot be pronounced unreasonable."

It is true that he was not dealing with a case where $1 was the sole consideration, but where covenants and agreements as to exploration and payment of royalties constituted a part of the consideration. But what was said has equal application to a case where the exploration and royalties are secured, not by covenant, but by condition subsequent.

[4] Again, the $1 paid relates to all the rights that the lessee obtains thereunder, so that it upholds any one of them that may be in question. The appellate court of this circuit, through Judge Day, in the case of Allegheny Oil Co. v. Snyder, supra, said:

"The lessee is given 2 years within which to drill, which privilege he may extend by the payment for further delay at the rate of $1 per acre at or before the end of the following year. It is claimed that the consideration of $1 may support the grant of the 2-year term, but the privilege of extending the same beyond the term of 2 years is supported by no consideration and is entirely at the option of the lessee, and, before it can become a binding agreement, requires an engagement upon the part of the lessee to pay the stipulated sum of $1 per acre. * * * This construction undertakes to divide the lease into independent parts, and annuls the effect of the privilege granted to the lessee of continuing the right to drill a well upon payment of the annual sum stipulated. We are of opinion that this lease constituted an entire contract, and that the consideration recited supports, not only the grant of the 2-year term, but as well, the privilege of extending the time of drilling, by paying the stipulated price therefor. * * * This instrument is a contract. Assuming, now, that it is free from fraud, and between parties capable of contracting, it can be supported by the consideration of $1 as well as any other valuable consideration. It is an indivisible agreement. Each part of it must be given effect. We can add nothing to it, and take nothing from it. For the consideration named the lessee received a conveyance of the term, as we have already stated,

with a stipulation that the lease should become void unless delay in sinking a well within the term of the lease should be paid for at the rate of $1 per acre at the end of two years. This privilege is not to be separated from the other conditions of the lease. It is one of its terms, and must be given force and effect."

[5] Again, if the instrument recites the payment of $1, it cannot be shown by parol evidence that it was not in fact paid, and thereby invalidate it. Whatever right there is in equity to show by parol evidence the true consideration for a grant, and thereby contradict its recitals on this matter, it does not go so far, no more than at law, as to enable the grantor to invalidate it by showing that it was without any consideration whatever. The Supreme Court of Illinois, through Judge Scott, in the case of Stannard v. Aurora, etc., Ry. Co., 220 Ill. 469, 77 N. E. 254, said:

"While the recital of the payment of the consideration in a deed may be contradicted for certain purposes, yet such acknowledgment of payment cannot be contradicted by proof, for the purpose of wholly invalidating the deed or impairing its legal effect as a conveyance."

This position is of no consequence here, for it was proven that the $1 was paid for the Tipton lease, and, though there was no evidence that it was paid for the Pitts lease, there was none that it was not paid, and it is quite likely that it was in fact paid.

[6] Now, there is a certain position which necessarily follows from those thus taken as to such an instrument. This is that a suit in equity brought by the lessee to protect this right from invasion, either by the lessor or a subsequent lessee, is not a suit either to enforce specific performance of a contract or to enjoin the breach of a contract. It is nothing more nor less than a suit to prevent waste. It differs from the ordinary suit to prevent waste, in that the property which is about to be converted or destroyed by the defendant is not the property of the plaintiff. It—i. e., the oil and gas in place—is, as we have seen, the property of no one. But it is property which he has the exclusive right to find, produce, and make his own. In the cases of Allegheny Oil Co. v. Snyder, supra, and of Logan Natural Gas Fuel Co. v. Great Southern Gas & Oil Co., 126 Fed. 623, 626, 61 C. C. A. 359, 362, which were suits between rival lessees in oil and gas leases, the appellate court of this circuit, through Judge Day, in the one case said:

"The equitable estate of appellees was in danger of destruction by the removal of gas and oil. In such case equity will intervene to prevent irreparable injury. Having acquired jurisdiction for the purpose of preventing waste and the destruction of the estate, a court of equity will retain jurisdiction for the purpose of granting full relief."

And, in the other, through Judge Severens, it said:

"But the immediate purpose of the suit is to restrain waste and threatened trespasses, and the court may entertain the bill for that purpose, even if the plaintiff be not in possession, and, having thus acquired jurisdiction, it may also proceed to settle the question of title and remove the cloud."

And see the case of Backer v. Penn Lubricating Co., 162 Fed. 627, 89 C. C. A. 419.

The Supreme Court, through Mr. Justice Van Devanter, in the case of Guffey v. Smith, supra, 237 U. S. 115, 35 Sup. Ct. 530, 59 L. Ed. 856, which was a suit between rival lessees, thus expressed itself on this point:

"Rightly understood, this is not a suit for specific performance. Its purpose is not to enforce an executory contract to give a lease, or even to enforce an executory promise in a lease already given, but to protect a present vested leasehold, amounting to a freehold interest, from continuing an irreparable injury calculated to accomplish its practical destruction. The complaint is not that performance of some promised act is being withheld or refused, but that complainants' vested freehold right is being wrongfully violated and impaired in a way which calls for preventive relief. In this respect the case is not materially different from what it would be if the complainants were claiming under an absolute conveyance rather than a lease. In a practical sense this suit is one to prevent waste."

In taking the interest of the lessee which was sought to be protected as a "vested freehold interest," possibly Mr. Justice Van Devanter was doing no more than accepting the view of the Supreme Court of Illinois, which was to that effect, and by which he was bound. The statement, however, is no less true if the vested interest were less than a freehold.

And a certain other position follows from this. It is that the doctrines applicable to suits to specifically enforce contracts and suits to enjoin breaches of contracts have no pertinency whatever to a suit to protect such an interest as is involved in the present discussion from invasion by a wrongdoer. The only doctrines applicable thereto are the doctrines applicable to a suit to prevent waste.

There is a vague doctrine, applicable to suits to specifically enforce contracts, that equity will not grant relief where there is not mutuality of obligation and of remedy. I dealt with this doctrine somewhat in the case of Blanton v. Kentucky D. & W. Co. (C. C.) 120 Fed. 318, 350. It is also a well-recognized doctrine applicable thereto that equity will not so do if the consideration for the obligation sought to be enforced was inadequate, or otherwise it was unfair to hold him to it.

As these doctrines have applicability to suits for specific performance, and a suit to so protect is not such a suit, they cannot have application thereto. But in passing it may be noted that in the case of such an instrument there is no want of mutuality. Each party to the agreement has done his part, and what the other has done is the consideration for what he has done. There is no more want of mutuality than there is in a swap of horses. The lessor has parted with the right granted, and the lessee has parted with his $1. The instrument is an executed one on both sides. Nor can there be said that there is any real inadequacy of consideration for the right granted by the lessor for the reason heretofore indicated. There is no unfairness on either side.

[7] Viewing a suit to so protect as it really is—i. e., a suit to prevent waste—the only consideration that could possibly affect its maintainability is whether there is an adequate remedy at law. But as to this there can be no question. There is no adequate remedy at law. There would be none, even if the lessee could sue in ejectment, which

he cannot do. Kelly v. Keys, 213 Pa. 295, 62 Atl. 911, 110 Am. St. Rep. 547. That he cannot so sue is not because he has no vested interest. The reasons why he cannot sue were set forth by Judge Lurton in the case of Petroleum Co. v. Coal, Coke & Mfg. Co., 89 Tenn. 381, 18 S. W. 65.

[8] So viewing it, the right to maintain it is not affected by the adequacy of the consideration given for the interest sought to be protected, even though it was inadequate, and the party against whom it is sought to be protected may be the one from whom the interest was acquired. I do not understand that, if one is the owner of land covered by valuable timber, it is any answer to his suit against another to enjoin him from cutting it down and converting it to his own use that he did not give an adequate consideration for it when he acquired it. The fact that the person sought to be enjoined is the person from whom he acquired it can make no difference. Nor is the right to maintain it affected by the fact that the interest sought to be protected is liable to be forfeited by a failure to explore, or to produce, or to deliver, or to pay royalties. Property held upon condition subsequent is just as much entitled to protection from destruction as that held absolutely.

[9] We have thus cleared the way for a consideration on principle of the question as to the validity of the leases involved here and plaintiff's right to the equitable relief which they seek. Those leases contain covenants by the lessee, which, apparently at least, constitute a part of the consideration, and a surrender clause. In the light of the position which we have taken, does that clause affect their validity or plaintiffs' right to such relief? Here we must beware lest we be "captured by formulas and epigrams," and must, as always, "think things through." This caution is called for because the position that the effect of such clause is to so invalidate the leases as to disentitle plaintiff to such relief is built upon two formulas or epigrams. One of them is that contracts unperformed, optional as to one of the parties, are optional as to both. The way in which it is claimed that this rule finds application here is this: The effect of the surrender clause was to render the performance by the lessee of his covenant optional with him. It is only on this basis that it can be claimed that the rule has application. As, then, it was optional with the lessee whether he would perform his covenants, it was optional with the lessors to terminate the leases at any time before anything was done under them, and this they did by making the rival leases. But this rule has application only to a contract which is wholly executory and unperformed, in that it consists of mutual promises, each the consideration of the other, and by which it is optional with one of them whether he will perform his promise. If it is, it is optional with the other whether he will perform his. In such a case there is, as it is put, a want of mutuality. And this is the only want of mutuality in matter of obligation which affects the validity of a contract or the right to its specific performance. It is thus referred to in 9 Cyc. 327:

"There are many cases in which, although the offer is definite enough, yet the acceptor by mere accepting has really himself promised nothing in return, has not made himself liable for anything, so that, although one is bound,

the other is not, and the engagement lacks what is called mutuality. In such a case there is not an enforceable agreement. The most frequent example of this principle is when one offers to supply another with such goods of a certain kind as he may choose to order or may 'wish' during a certain time, and the other accepts the offer. Here there is no consideration for the promise or offer, for the promisee has not bound himself to anything and has incurred no legal liability at all. The correct view of the case is that there is no agreement binding on the promisor, but simply an offer on his part, which may be accepted by giving an order until such time as it is actually withdrawn or expires by limitation of time."

But these leases are not wholly executory contracts and unperformed. They do not consist of mutual promises, each the consideration of the other. So far as the lessors were concerned, they were wholly executed. Thereby, as we have seen, there was granted an estate in possession, which vested immediately upon its execution, to wit, an estate for 10 years in which to explore for oil and gas, and was terminable possibly sooner; i. e., upon drilling a dry well, or upon failure to drill a test well or pay the commutation money as provided, or upon failure to drill such well after notice from the lessor so to do. Thereby also was granted an estate in the future, which would vest upon the discovery of oil and gas, without more, to wit, an estate to produce oil and gas as long as they might be found, terminable possibly sooner; i. e., upon failure to produce, or to deliver, or pay royalties. Possibly they were wholly executed, also, so far as the lessee was concerned; this upon the idea that the effect of the surrender clause was to make it optional with the lessee whether he would perform his covenants, and that this made it the same as if the leases contained no covenants at all on the lessee's part, and the exploration, production, and delivery, and payment of royalties, were secured only by a condition subsequent, in which case the sole consideration was the $1. Possibly, as the right to surrender was only upon the payment of $1, the case was not the same as if the leases contained no covenants on the part of the lessee and they constituted a part of the consideration. At any rate the lease was executed on the lessee's part so far as the payment of the $1 was concerned. And under the case of Allegheny Oil Co. v. Snyder, supra, as we have seen, the payment of the $1 was the consideration, not only for the grant, but for the surrender clause; i. e., for the option on the lessee's part to return to the lessor the rights granted to the lessor and be relieved of the obligation to perform the covenants, and a sufficient consideration to uphold such option. An option, for which a consideration has been given, is enforceable against the person giving the option, though he cannot compel the one to whom it is given to accept it. In 9 Cyc. p. 334, it is said:

"When there is an agreement founded on a consideration, it is not invalid for want of mutuality, because one party has an option while the other has not, or in other words because it is obligatory on one and optional on the other."

Options in leases to the lessee to purchase are valid, and there is no reason why an option in a lease based upon a valuable consideration to the lessee to turn the property back to the lessor and be released of further responsibility should not be equally valid. Besides, in a

case where $1 is the sole consideration, and the lease contains no covenant on part of the lessee, but it secures the benefits to the lessor by a condition subsequent, in which case there can be no question as to the validity of the lease, the lessee can effect a complete surrender at his option by not performing the condition. The mere fact that it is provided that at any time he may surrender the lease can make no difference.

[10] The other formula or epigram had in mind is after the same order, but more specific. It is that a tenancy at the will of one party is at the will of the other. The position is that by virtue of the surrender clause the holding by the lessee under these leases was a tenancy at will; i. e., at the will of the lessee, and hence at the will of the lessor as well. But such was not the nature of the holding of the lessee thereunder. He was not a tenant at will. He had no right to hold thereunder, as long as he willed. In no contingency could he hold for the purpose of exploration longer than 10 years or, if oil and gas were found, for a longer time than they could be produced. If either holding was subject to a condition subsequent, it might be terminated short of the period for which it was to last by the happening thereof, and possibly the holding for the purpose of exploration might be terminated by the test well proving dry. The surrender clause merely provided another contingency for terminating the holding short of such period. So far, then, the estates granted were not estates at will, but estates on limitation. That for the purpose of exploration was an estate for years on limitation. In 2 Reeves on Real Property, § 659, it is said:

"Estates at will are such as are to be ended at the will of either party; the intent to have them so may be clearly expressed or reasonably implied, and making an estate terminable at the option of the landlord, without more, shows that intent."

In note 3 thereto it is said:

"When a greater interest is first created, as for years or life, etc., and then made terminable at the election of either party, the law's preference makes the larger estate, and not one at will, and a conveyance by A. to B. for life, or for 10 years, to be ended, however, at the will of either A. or B., or both, makes an estate for life or for years, as the case may be. Section 648, supra."

In section 648 it is said:

"An estate for years on limitation is one that may terminate naturally before the entire period has elapsed. * * * An illustration is found in a lease for 10 years, to be terminated, however, at any time within that period at the option of either party."

Nor is it true that every tenancy at the will of the lessee is at the will of the lessor. Blackstone, vol. 1, book 2, p. 144 (Sharswood's Ed.), defines an estate at will as one—

"where land and tenements are let by one man to another, to have and to hold at the will of the lessor."

And he adds (page 145):

"But every estate at will is at the will of both parties, landlord and tenant, so that either of them may determine his will and quit his connection with the other at his own pleasure."

The estate at will which he says is at the will of both parties is an estate at will, as theretofore defined, to wit, an estate at the will of the lessor. Kent, vol. 4, p. 110 (6th Ed.), is to the same effect. Neither of these authorities, therefore, recognizes an estate at the will of the lessee as an estate at will, which is at the will of both parties. It is not to be gathered from either one of them that there is such a thing as an estate at will, constituted by creating an estate at the will of the lessee. But in Co. Litt. 55a, it is said:

"And so it is when the lease is made to have and to hold at the will of the lessee, this must also be at the will of the lessor."

It is said, however, as to this statement, in 1 Leake, Land Law, p. 206, note (b), as follows, to wit:

"But, as to the lease at the will of the lessee last mentioned, Coke must be understood as meaning a lease without livery or other sufficient conveyance of a freehold estate."

This implies that, if an estate at the will of the lessee is created by lease with livery of seisin or other sufficient conveyance of a freehold estate, it is not also at the will of the lessor. The reason, therefore, why at common law, in the case of a lease purporting to grant an estate at will of the lessee, the estate was one at the will of both parties, was this: An estate at the will of the lessee was the equivalent of a life estate, and an estate at the will of the lessee, his heirs and assigns, was the equivalent of a fee-simple estate. Each estate was a freehold estate and could not be created without livery of seisin. Possibly there could be no livery of seisin under a lease. It was not such an instrument that there could be livery of seisin under it, though Leake seems to imply that there could be. In case, therefore, of a lease, at least one without livery of seisin, purporting to grant an estate at the will of the lessee, no estate whatever passed to the lessee. As a sequence, he held it at the will of the lessor, and his estate came within the strict definition of Blackstone and Kent of an estate at will; i. e., an estate at the will of the lessor. It does not follow, therefore, from this position of the common law, that an estate at the will of the lessee, created by an instrument by which such an estate can be created, is also an estate at the will of the lessor. And it has been held that such an estate, so created, is not such. In the case of Effinger v. Lewis, 32 Pa. 367, it was so held. The Supreme Court of Pennsylvania, through Lowrie, C. J., there said:

"This lease is for 100 years, with the right in the lessee, his heirs and assigns, to hold the premises at the same rent as long thereafter as he or they shall think proper; and the counsel insists that, after the hundred years, this becomes a lease at the will of one party, and therefore of either. He urges that such was, for several centuries, the common law of England, and that, therefore, it is now a part of our common law, and that we have assumed legislative functions in setting it aside."

To this position answer was made as follows, to wit:

"Now, if the law relied on here depended on a custom that has passed away, it is not we, but the people themselves, that have set aside the law; and it would be mere usurpation in us to declare that it is still in force. That law did depend on a custom that has passed away. An estate at the will of the

grantee, his heirs and assigns, is equivalent to a fee simple, and such an estate could not, by the old customs, be conveyed without livery of seisin. By the same customs there could be no livery of seisin under a lease, but a mere taking of possession. Land granted by livery of seisin, without defining the quantity of the estate, was treated as a life estate. Where there was merely a delivery of possession, without defining the term, there arose only a tenancy at will. For want of livery of seisin, and the form of conveyance proper to that ceremony, it was necessary to treat an estate at the will of the grantee as being also at the will of the grantor, else a fee simple might be granted in a form that pertained to the lowest order of estates; and this the customs of that day did not allow. Now and here it is otherwise. With us a fee simple may be granted without livery of seisin, as well as a lease for years or at will."

### And it was concluded:

"There is nothing, therefore, to prevent us from giving effect to this contract according to the intention of the parties. If they meant to create an estate that should endure so long as the grantee, his heirs and assigns, should desire to keep it at the rent agreed upon, then such is its character; and this silences all the minor objections brought to bear on the title. That they did mean such an estate is quite plain from their agreement. * * * The parties have so contracted, and the law does not forbid it."

The case of Delhi School District v. Everett, 52 Mich. 314, 17 N. W. 926, involved a lease to a school district, to hold the property "during the time it is used for school purposes," which had been given for a present money consideration. The Supreme Court, through Judge Cooley, had this to say as to this instrument:

"It is fully conceded by the defendant that the understanding was that the district should have the land so long as it should be occupied for school purposes; and the instrument which he gave shows this intent very conclusively. The instrument was therefore at the very least a lease in perpetuity at the will of the lessee."

These two decisions may appear to be to the contrary, to wit: Cheever v. Pearson, 16 Pick. (Mass.) 266; Doe v. Richards, 4 Ind. 374. In the Massachusetts case, liberty was granted by a Congregational society to certain persons to erect a seminary on the parsonage land, with liberty to remove the same at pleasure. The building was erected. Thereafter the lessor gave notice to quit and brought ejectment. It was held that it was entitled to recover. In the Indiana case a mother granted to her son certain land held by her for life, to occupy so long as he desired; he agreeing to allow her to live in the house and to support her. After the lapse of 2½ years from the making of the grant she left the house, having deeded the premises to another and given her son notice to quit. It was held that her grantee was entitled to recover. The decision in the Massachusetts case was based upon Coke's statement quoted above, and the Indiana case on that and the Massachusetts case. But in each case the grant was gratuitous. The only consideration for the grant in the Massachusetts case was the benefit to the public from the erection of the seminary. In the Indiana case, though the grantee agreed to support the grantor, this agreement was not a binding obligation, because of his right to surrender the property whenever desired.

Possibly, however, these cases cannot be distinguished on this

ground. Whether so or not, it would seem clear that in the case of a grant of an estate at the will of the grantee, without consideration being given therefor—i. e., a grant which is invalid for want of a consideration—the grantor has the right at his will to reclaim the property at any time. This is not because the estate is held by the grantee at his will, but because the grant is invalid for want of consideration. So in case of a grant of an estate on limitation, the grantee having the right to terminate it at his will without consideration being given therefor, and hence invalid, the grantor has the right to reclaim the property, not because the estate may be terminated at the will of the grantee, but because the grant is invalid for want of consideration. But where either estate is granted for a consideration, so that the grant is valid, and particularly for a valuable consideration, consisting of cash paid or a binding obligation then entered into by the grantee, no such reason for the grantor having the right to reclaim the property exists. And why should he have such right because, in the one case, the grantee holds at his will, or, in the other, has the right at his will to terminate the estate? Why cannot the owner of property for value grant to another the right to hold it as long as he wants, or at his will to terminate an estate granted without himself having the right to terminate the estate at his pleasure? What conceivable reason is there for the position in either case that the grantor can go back on his bargain and reclaim what he has so granted?

Such is the case we have here. Possibly because of the surrender clause the covenants and agreements on the part of the lessee were not binding obligations on him, and hence not sufficient to uphold the leases. Possibly, also, as the lessee did not have an absolute right of surrender, but only right so to do on the payment of $1, they were binding obligations and constituted part of the consideration of the leases. However it may be as to these matters, there was, apart from such covenants and agreements, a valuable consideration for the leases sufficient to uphold them and every privilege therein granted to the lessee, to wit, the payment of the $1. Such small consideration should not prejudice one against the grant of an estate at the will of the lessee in relation to oil and gas, in view of the conditions subsequent which the courts are keen to imply to protect the grantor. We come here, therefore, to the same point which we reached in considering the other formula or epigram. The privilege in the lessee to surrender the estates in him at his will is an option in the lessee. And in case of an option, for which value has been paid, the one giving it is bound to submit to the exercise thereof by the other to whom it is given, though he has no right to compel its exercise by him.

[11] Our conclusion, therefore, is that on principle the leases in question are valid, and plaintiffs are entitled to the relief which they seek. We see no possible room of escaping from it.

We are now in position to determine how the matter stands upon authority elsewhere than in Kentucky. It is claimed by defendant that it has been held that an oil and gas lease containing a surrender clause is invalid in eight states, to wit, Indiana, Virginia, West Virginia, Texas, Tennessee, Louisiana, Oklahoma, and Colorado. The decisions

relied on as so holding are as follows, to wit: Knight v. Indiana Coal & Iron Co., 47 Ind. 105, 17 Am. Rep. 692; Cowan v. Radford Iron Co., 83 Va. 547, 3 S. E. 120; Eclipse Oil Co. v. South Penn Co., 47 W. Va. 84, 34 S. E. 923; Trees v. Eclipse Oil Co., 47 W. Va. 107, 34 S. E. 933; Huggins v. Daley, 99 Fed. 606, 40 C. C. A. 12; Reese v. Zinn (C. C.) 103 Fed. 97; Federal Oil Co. v. Western Oil Co. (C. C.) 112 Fed. 373; Federal Oil Co. v. Western Oil Co., 121 Fed. 674, 57 C. C. A. 428; Roberts v. McFadden, 32 Tex. Civ. App. 47, 74 S. W. 105; Guffey Pet. Co. v. Oliver (Tex. Civ. App.) 79 S. W. 884; Tennessee Oil Co. v. Brown, 131 Fed. 696, 65 C. C. A. 524; Logansport Gas Co. v. Null, 36 Ind. App. 503, 76 N. E. 125; Murray v. Barnhart, 117 La. 1023, 42 South. 489; Superior Oil Co. v. Mehlin, 25 Okl. 809, 108 Pac. 545, 138 Am. St. Rep. 942; Kolachny v. Galbreath, 26 Okl. 772, 110 Pac. 902, 38 L. R. A. (N. S.) 451; Goodson v. Vivian Oil Co., 129 La. 955, 57 South. 281; Long v. Sun Co., 132 La. 601, 61 South. 684; Witherspoon v. Staley (Tex. Civ. App.) 156 S. W. 557; Davis v. Riddle, 25 Colo. App. 162, 136 Pac. 551. This is a formidable array of decisions. What they stand for and what is their value call for a careful consideration of each one of them.

The Indiana decisions come first. They are that of the Supreme Court of the state in Knight v. Indiana Coal & Iron Co., decided in 1874; that of the United States Circuit Court for that district and the Circuit Court of Appeals for that circuit in the case of Federal Oil Co. v. Western Oil Co., decided in 1902, and that of the Appellate Court of that state in the case of Logansport Gas Co. v. Null, decided in 1905. The instrument involved in the Knight Case was a grant of a mining right in land. The substances, the right to mine which was granted, were coal, limestone, iron ore, fire clay, and oil. The duration of the right was not specified. The consideration for the grant was $1 in hand paid and the agreements therein mentioned. These agreements were to search for those substances, and, if found, to produce them and pay certain royalties. It contained a provision that the grantee should have the right at any time to abandon the lands and mining and remove all his buildings and fixtures. The suit was by the grantor to quiet his title against the claims under the grant. It does not appear whether anything had been done under the grant, or how long a time had elapsed since it was made, until the suit was brought. It was held that plaintiff was entitled to relief. The instruments involved in the other two cases were oil and gas leases. That in the Federal Oil Company Case was made February 22, 1901. It recited that it was made in consideration of the sum of $1, the receipt of which was acknowledged. No time was specified within which the exploration was to be made. It provided that in case no well was commenced within one day from its date it should be null and void, unless the lessee should thereafter pay at the rate of $8.75 for each month such commencement was delayed in advance, and further that the lessee might cancel and annul the contract at any time. Thereafter the commutation money was regularly paid in advance for eight months; i. e., to October 22, 1901. On October 19th the installment

due October 22d was tendered and refused. Thereupon the lessor made another lease, and the lessee thereunder entered and began drilling, and prevented the first lessee from so doing. And on November 18, 1901, the.latter brought suit against the lessor and the second lessee for an injunction. It was held both by the Circuit Court and the Circuit Court of Appeals that the lease was invalid and the plaintiff was not entitled to relief.

The instrument involved in the Null Case was made January 5, 1899. It recited that it was made in consideration of $1 and the agreements and covenants therein contained. Amongst these was an agreement to drill a well within 3 months, or thereafter pay for further delay a yearly rental of $75 until a well was drilled. No time was prescribed in which a well was to be drilled. It provided that a refusal to pay the rental when due should be a surrender by the lessee of the rights granted, and further that he might at any time reconvey the grant, and thereupon the instrument should be null and void. Payment was made of the rental up to July 1, 1901, and it was understood that it was to be paid thereafter annually from July 1st. No payment was made on or before July 1, 1902, but a year's rent was tendered and refused July 7, 1902. Thereafter the lessor brought suit to quiet his title against claim of the lessee under the lease. It was held that he was entitled to relief. Clearly this case is without pertinency here. The failure to pay the commutation money when due terminated·all rights under the lease by its very terms.

The other two cases must be conceded to be pertinent. In each case the instrument involved contained a surrender clause. This clause was the basis of the decision in the Knight Case and was not without its effect on that in the Federal Oil Company Case. Three things may be said as affecting the value of the decisions in these two cases. In the Knight Case two of the judges of the court dissented. The decision was based upon the authority of Blackstone and Kent and the prior one in Doe v. Richards. The quotations from Blackstone and Kent were to the effect that an estate at will is at the will of both parties, that from Blackstone being the one heretofore made. No note was taken of the definition of either as to what constituted an estate at will, to wit, an estate at the will of the lessor. As to Doe v. Richards no note was taken of the difference between it and the case in hand, in that in the latter there was a valuable consideration for the grant, to wit, $1, in hand paid, and in the former there was no such consideration therefor. It might be noted, further, that for aught that appears there was room in the facts of the case for the position that there had been a forfeiture of the lease by reason of breach of an implied condition subsequent, which was calculated to prejudice one against it. In the Federal Oil Co. Case the suit was regarded as one for the specific performance of a contract, and therefore governed by the principles applicable to such a suit, and not, as it really was, a suit to prevent waste, and governed only by the principles applicable to such a suit. The fact that the lessee had a vested estate in possession for exploration purposes for a reasonable time, no specific time being prescribed, and the consequences following therefrom, seem not

to have been fully appreciated and realized. That he had such an estate is involved, but not clearly brought out in this statement of Judge Jenkins in his opinion on behalf of the Appellate Court, to wit:

"The legal effect of the instrument here in question is therefore the grant of a mere use for the purpose of prospecting. The title is inchoate, and for purposes of exploration only until oil or gas is found. If not found, no estate vests in the lessee, and his title, whatever it is, ends with the abandonment of the unsuccessful search. If found, the right to produce becomes a vested right, and the lessee will be protected in exercising it in accordance with the terms and conditions of his contract."

We find recognition of the fact that he had such an estate in the statement that the legal effect of the instrument was the "grant of a mere use for the purpose of prospecting," and that, if oil or gas is not found, the lessee's "title, whatever it is, ends." But it is obscured by the further statements that the "title is inchoate" until oil or gas is found, and that if it is not found "no estate vests in the lessee," and by the emphasis placed on the fact that, if oil or gas is found, the lessee has a "vested right" which will be protected. What is inchoate, and not vested until oil or gas is found, is the right to produce them. The title to the oil or gas itself remains inchoate, and not vested, until it is actually produced. But the estate in possession for exploration purposes was at no time inchoate or not vested. It vested immediately upon the execution of the instrument, and, as no time was specified for it to endure, it was for a reasonable time. And this estate was entitled to as much protection as the estate to produce would have been, had it vested by the finding of oil or gas. It seems to me that it is in the failure to fully appreciate and realize the fact that the lessee in such instruments has an estate in possession for exploration purposes, and the consequences which flow therefrom, that such a suit has been treated as a suit for specific performance of a contract. It is not clear whether it was considered that the instrument was invalid at law or subject to concellation in a suit in equity; and the doctrines applicable to a suit to enforce specific performance of a contract, which it was held were against plaintiff's right to relief, were two. They were unfairness and want of mutuality. The only possible basis of the position that the instrument was unfair to the lessor was that under it the lessee had an unlimited time in which to explore. If he only had a reasonable time in which so to do, it is hard to see wherein the unfairness came in. The position that there was want of mutuality was based on the absence of an express agreement to explore or to pay anything for delay in exploration. It consisted in the fact that the lessee had the right to exercise the rights granted to him if he chose, but he could not be compelled to exercise them. But there was no want of mutuality here, no more than in the case of any valid option. The lessor had received the $1 consideration in return for this privilege.

Not much emphasis was placed in either court on the surrender clause, but more in the lower court than in the appellate court. In both courts the Knight Case was cited in support of the conclusion reached. Possibly, as the question was a local one, in view of that decision, the result could not have been otherwise than it was. The lower

court was in the grip of the last of the two formulas or epigrams to which I have referred. Judge Baker said:

"It is a well-settled rule of law that a lease which is determinable at the will of one party is equally determinable at the will of the other party."

The appellate court was in the grip of the other. Judge Jenkins said:

"Contracts unperformed, optional as to one party, are optional as to both."

The real question in the case seems to have been whether at the end of the eighth month a reasonable time in which to explore had elapsed. If so, the lessor was not bound to accept the tender of the ninth installment, and was free to make the other lease. If it had not, the lessee was entitled to the relief which he sought. But neither this decision nor that in the Knight Case represent any longer the law of Indiana as to the effect of a surrender clause. This is because of the decision of the Supreme Court thereof in the case of New American Oil & Mining Co. v. Troyer, 166 Ind. 402, 76 N. E. 253, 77 N. E. 739. The recited consideration for the lease there involved was $1 and the covenants and agreements therein contained. No time was fixed for the duration of the rights granted. The lessee agreed to drill a well within two months, or thereafter pay in advance for further delay a quarterly rental of $20 until the well was drilled. It was provided that, if the lessee should refuse to pay a quarterly rental when due, this refusal should be construed as his act for the purpose of surrendering the rights thereby granted, and further that the lessee might at any time reconvey the grant, and thereupon the instrument should be null and void. The lease was made April 10, 1899. Quarterly rents were regularly paid in advance up to June 10, 1901. On June 9th the rental for the quarter that then began was tendered and refused. Thereafter the lessor sued to have the title to the land quieted against the claim under the lease. It was held that he was not entitled to the relief sought. The case was exactly like the Federal Oil Company Case, except in that the lessor, after refusing to accept the rental, made another lease, and the lessee sued for an injunction against the lessor and the lessee in the second lease. Concerning the time in which the lessee had the right to drill, the Supreme Court, through Hadley, J., said:

"There being no definite time limit within which the well must be constructed, the law intervenes and directs that it shall be accomplished within a reasonable time. This means within a reasonable time at the option of the landowner."

On the original hearing no point was made of the surrender clause. It was put forward on a petition for rehearing, and the Knight Case was relied on as fatal to the lessee's claim under the lease. Notwithstanding this, the court adhered to its former ruling in sustaining that claim. It distinguished the Knight Case on the ground that the instrument there involved related to the mining of coal, and held that it was "not an authority in an oil and gas contract of the character under consideration." I am unable to see that the Knight Case was

not applicable on the ground stated. But, however this may be, since the decision of this case an oil and gas lease is no longer invalidated in that jurisdiction by a surrender clause. Nor is the decision of the Circuit Court of Appeals for the Seventh Circuit in the Federal Oil Company Case of any value as a federal authority. The decision of that court in the case of Smith v. Guffey, 202 Fed. 106, 120 C. C. A. 436, was based upon its previous decision in the Federal Oil Company Case, and the decision in the latter case was reversed by the Supreme Court in Guffey v. Smith, supra.

Next comes the decision of the Supreme Court of Virginia in Cowan v. Radford Iron Company, decided in 1887. That was a suit brought by the lessor in January, 1884, to cancel a mining lease made June 22, 1880. The substance claimed to be covered by it was iron ore. No time was specified for the expiration of the rights granted. The sole consideration for the grant was the agreement to pay royalties for all ores taken from the land. It provided that the lessee might, at any time, remove the improvements made by him on the land. The lessee entered in the summer and fall of 1880, removed a small quantity of ore, paid the royalty on it, and then abandoned the enterprise. It was held that the plaintiff was entitled to the relief sought. The decision might have been based on the ground that the lease was without consideration, or that the rights granted had been forfeited by breach of an implied condition subsequent, but was not. It was based upon the idea that the lease created an estate at will. The court, through Lacy, J., said:

"If this estate is at the will of one of the parties, it is equally at the will of the other"

—and cited in support of its conclusion the Doe and Knight Cases from Indiana and the quotations from Blackstone and Kent made in the opinion in the Knight Case. The decision is of no value upon the question we have here, even in that jurisdiction.

The West Virginia decisions come next. They are those of the Supreme Court of the state in Eclipse Oil Co. v. South Penn Co. and Trees v. Eclipse Oil Co., decided in 1899, that of the United States Circuit Court of Appeals for the Fourth Circuit in Huggins v. Daley, decided in 1900, and that of the United States Circuit Court for that district in Reese v. Zinn, also decided in 1900. The instruments involved in these cases were all oil and gas leases. The rights granted by that involved in the two Eclipse Oil Company Cases was "for and during the term of 3 years from the date thereof and so long thereafter as oil and gas can be produced in paying quantities." The consideration recited therefor was the "covenants and agreements hereinafter mentioned." Those agreements were to give a part of the oil and pay $200 per annum per gas well as royalties and one in relation to the matter of exploration. It was to drill one test well within six months, or in lieu thereof thereafter pay $1 per acre per annum until the well was completed. It provided that, if the test well was not so completed or rentals paid, it should be null and void, and further that the lessee should have the right to, at any time, surrender the

lease and be released from all moneys due and conditions unfulfilled. The lease in the first of the two cases was made May 11, 1897. No test well was drilled. June 18, 1898, the lessor made another lease, under which entry was made. Thereafter, to wit, on November 10. 1898, the lessee in the first lease paid the first year's rental to the lessor, which was in time to keep the lease alive if valid. He then sued the second lessee and sought an injunction against him. It was held that he was not entitled to the relief sought. The lease in the other one was made August 16, 1898. No test well was drilled here. Within the 18 months the lessor died and his representatives made a lease to another. Thereafter, and before the lapse of the 18 months, the lessee in the first lease paid the rental to such representatives and entered. Thereupon the lessee in the second lease sued him and sought an injunction. It was held that the plaintiff was entitled to the relief sought. In Huggins v. Daley the lease was made March 12, 1897. The rights granted were for the term of 5 years and as much longer as oil or gas was found. The consideration recited for the lease was $1. It contained a "provided" clause to the effect that a well should be commenced within 30 days and completed within 90 days, and in case of failure to do so that lessee should pay to the lessor a forfeiture of $50. The lease did not contain a surrender clause. No well was begun, and on November 6, 1897, the lessor made another lease under which entry was made. The first lessee sued the second lessee for an injunction. It was held that the plaintiff was not entitled to the relief sought. The facts of the case of Reese v. Zinn are not given in the opinion therein. It was a suit by the lessor against the lessee for a cancellation of the lease, and it was held that plaintiff was entitled to such relief. Judge Jackson thus stated the reasons for his conclusion:

"First, because the parties who claim under the lease * * * have, by the terms and provisions of that lease, * * * not only forfeited their rights, but have abandoned the lease; second, because the contract is void for want of mutuality, for the reason that it puts it in the power of the lessee to terminate the lease at will, and thereby confers the same power upon the lessor. This principle is well settled by numerous decisions, both in our own courts as well as courts of other states."

The only decision cited as tending to support the second reason is the first of the Eclipse Oil Company Cases, above referred to, and is evidently based upon it. It goes with that case so far as it is pertinent here. The case of Huggins v. Daley has no pertinency here. The lease there involved contained no surrender clause, and no question was made therein as to the validity of the lease. The sole question was whether the lessee had forfeited his rights under the lease by the failure to drill the test well as therein provided. It is well to bear this in mind, for this case has been much cited in later cases involving the question we have here.

The decisions as to the validity of the leases involved in the Eclipse Oil Company Cases were based on several grounds. One of them has no bearing whatever here. It was that the lease was without consideration. The sole consideration therefor recited therein was the cove-

nants and agreements therein. This it was held was not a sufficient consideration because of the surrender clause, which made of it no binding obligation. The court, through Dent, P., said:

"This clause apparently destroys this lease, or renders it invalid, at least until some consideration has passed from the lessee to the lessor. . * * * This renders it, to this extent, nudum pactum, by which the lessor is not bound any more than the lessee."

The other reasons do have pertinency here. One was that the estate granted was, by virtue of the surrender clause, at the will of the lessee, and hence also at the will of the lessor. In support of this position Blackstone and Kent and the decisions in the Doe and Knight Cases from Indiana, and the case of Petroleum Company v. Coal, Coke & Manufacturing Co., supra, to which further reference will hereafter be made, were cited. The others were based upon the assumption that the suit was a suit in part, at least, for specific performance. It was recognized that the suit at bottom was a suit to prevent waste, but . thought that to a certain extent, at least, it was also a suit for such relief. Being so, it was held that plaintiff was not entitled thereto, because the lease was unfair, in that the lessee could hold for 18 months without drilling a well or paying commutation money; it not being provided that it was payable in advance of the beginning of the last 6 months, though in the opinion on petition for rehearing it seems to have been thought that it was so payable, and the lease forfeited for not so paying it, and further because of a want of mutuality. That these reasons were not good reasons for holding the leases invalid we have already indicated. And that court in later decisions has held that they were not. It has limited the soundness of the decision to the first one considered, to wit, the want of a valuable consideration therefor, and has expressly held that where there was other consideration than the covenants and agreements in the lease it is valid, notwithstanding the surrender clause. This it has done in the cases of Lowther Oil Co. v. Guffey, 52 W. Va. 88, 43 S. E. 101, Pyle v. Henderson, 65 W. Va. 39, 63 S. E. 762, and Lovett v. Eastern Oil Co., 68 W. Va. 667, 70 S. E. 707, Ann. Cas. 1912B, 360.

In the Guffey Case the lease provided that the lessee had the right to remove his property at any time, which amounted to a surrender clause. The recited consideration was $1, the receipt of which was acknowledged. It provided that, in case no well was completed within two years, the grant should immediately become null and void, provided that the lessee might prevent such forfeiture from year to year by paying annually in advance $18.75, until such well was completed. It was held that after the expiration of the 2 years the lease became one from year to year, at the option of the lessee, until a well was completed, against the unfair exercise of which privilege equity might relieve. The opinion was by Dent, P., who delivered the opinions in the Eclipse Oil Company Cases. He said:

"This lease is very different from the one passed on in the case of Eclipse Oil Co. v. South Penn Oil Co., 47 W. Va. 84 [34 S. E. 923]. While $1 is a small consideration, yet it is a valuable consideration, and the court cannot say that it was inadequate under the circumstances, as the lessors did not

consider it so. It was only intended to hold the grant for two years, and after that time a further consideration to prevent forfeiture was provided. During the two years the lessors did not object to the adequacy of the consideration, and it is too late to do so now. Such consideration for a similar lease has been held sufficient. * * * Inadequacy of consideration is not alone sufficient to invalidate a lease, although where it is grossly inadequate it is regarded as proof of fraud."

And again he said:

"The manacles were forged by the lessors themselves with their eyes open, and the court cannot remove them unless fraud can be shown, or the contract is so unfair and uneven as to render its enforcement equivalent to the perpetuation of fraud upon the lessors. It is claimed that this is a case of such character, because the lessee, by the prompt payment of the nonforfeiture sum could perpetually prevent the development of the land for oil and gas. It is not, however, probable that he would do so, and he is already actively engaged in drilling. If it could be shown that such was his purpose, it would amount to fraud, which equity might relieve against."

In the Pyle Case that court, through Brannon, J., said:

"One argument made for the second lease is that the first has no covenants binding the lessees to do anything, unless they wished; that it binds the lessees for nothing, until they should get oil, either to drill a well or pay money; that the lessor could have no suit for money or to compel operation of development of oil. It is thence contended that the contract wants an essential of a binding contract, namely, mutuality. Under this view the lessor could renounce or revoke the lease at any time, because, if not binding the lessee for anything, neither would it bind the lessor, and hence the second lease would be an election by Bunfill not to be bound and would confer good title. * * * We differentiate the present case from the Eclipse Case from the fact that no money was paid as a bonus in that case, whereas, one of $55 was paid for the lease in this case. We cannot see that when a lessee pays a money consideration for the right or privilege of boring for oil within a fixed time, and in default of so doing, or paying money as alternative, he has no vested right of exploration, but his privilege may be revoked at any moment, whether the limited time has expired or not. If that be the true view, the clause of cesser is needless, because a revocation could be made for want of mutuality only. It would seem to me that a lease of this character, the lessor receiving valuable consideration for the privilege of exploration for oil, would confer a valid right of exploration for the time and on the terms spoken of in it. Such would seem to be the intent of the parties, and the justice of the matter, notwithstanding the contract imposed no obligation on the lessee to drill or pay. The lessor has been paid his price for giving such privilege. It seems that this was the construction of the Eclipse Case in the opinion by Judge McWhorter in Harness v. Eastern Oil Company on page 250 of 49 W. Va. [38 S. E. 662]. Denying the aptness * * * of the Eclipse Case, he said: 'In that case the lessee paid nothing, had done nothing.' In Lowther v. Guffey, 52 W. Va. 88 [43 S. E. 101], Judge Dent, who prepared the opinion in the Eclipse Case, differed the two cases because of $1 paid as a bonus. That lease imposed no obligation on the lessee. In Tibbs v. Zirkle, 55 W. Va. 49 [46 S. E. 701, 104 Am. St. Rep. 977, 2 Ann. Cas. 421], a point held is: 'An option given for a valuable consideration cannot be revoked until the time limit therein has expired. If such option is without consideration, it may be withdrawn or revoked at any time before acceptance.' So we cannot say that from mere want of mutuality Bunfill could ignore the first lease."

In the Lovett Case the lease was for a term of 10 years and for as much longer thereafter as oil or gas should be found in paying quantities. It provided that the lessee should drill a well within 3 months, or thereafter pay $90 per annum in advance until a well should be drilled, and further that the lessee might surrender the lease at any

time upon notice to the lessor of his intention so to do, and notice of such intention might be given by a failure to pay rent when due. No well was ever drilled; six annual installments of rent were paid to the lessor and accepted by him. Thereafter he refused to accept any other installments, and the lessee deposited three of them in bank to the lessor's credit as provided in the lease. After the lapse of 9 years the lessor brought suit to cancel the lease, and it was held that he was not entitled to such relief. The court, through Brannon, J., said:

"He knew of these payments into bank. Lovett bases his claim to repudiate this lease on the theory that it is but a mere option, which he could revoke at any time because of the failure of the lessee to develop oil and gas. He claims that, as the lease gives the oil company right to surrender the lease at any time, he has the correlative right of cancellation. He claims that as the oil company had the right to surrender the lease, either expressly or by failure to pay the rental and be released from obligation, there is no mutuality of obligation, no consideration binding, and that he had the right to declare the lease at an end. We are cited for this contention to the cases of Eclipse Oil Company v. South Penn Oil Company, 47 W. Va. 84, 34 S. E. 923, and Trees v. Eclipse Oil Co., 47 W. Va. 107, 34 S. E. 933. I dissented in both those cases, as will appear in 34 S. E. 932, 934, though my dissent was omitted in the official state report from negligence of some one connected with the publication. But this is not material. Those cases proceed upon the idea that there was no binding leases; that there was no obligation, no promise on the part of the lessee to pay money or to do anything, and a privilege to surrender the leases without payment of anything, at mere will; that they conferred only an estate at the will of the lessee, and that, the estate being one at will, it might be terminated by either party; that there was no consideration for the lease. Those cases do not control this case. Why? Reference to Judge Dent's opinion in Lowther Oil Co. v. Guffey, 52 W. Va. 91, 43 S. E. 101, will show the difference between the leases in those cases and the lease involved here. So will the opinions in Harness v. Eastern Oil Co., 49 W. Va. 250, 38 S. E. 662, and Pyle v. Henderson, 65 W. Va. 42, 63 S. E. 762. In the lease before us we find a valuable consideration paid, as it recites the payment of $1 down. Will it be said that that small sum is not a sufficient consideration to support the lease? We said that it was sufficient, as consideration, to make the lease good in Lowther Oil Co. v. Guffey, supra. 'The mere inadequacy of a consideration does not render it insufficient, except as a circumstance bearing on the question of fraud or undue influence. A valuable consideration, however, small and nominal, if given or stipulated in good faith, is, in the absence of fraud, sufficient to sustain a parol contract. Accordingly, a grantor who has been tendered $1 as a consideration for his deed, cannot have it set aside for want of consideration, where it does not appear that he expected any other.' 1 Beach, Modern Law of Contracts, § 5. Look back at hundreds of deeds through hundred of years, and you will find them stating $1 as a valuable consideration. To say that such a consideration, acknowledged under seal, is not good, would be to overthrow myriads of deeds. The parties have chosen to treat it as a sufficient consideration; they have contracted that it shall be such; and no court, in the absence of fraud, can nullify their contract. The fact that it is so small a consideration will not render the lease a mere option. The fact that a valuable consideration was paid for such a lease differs this case from Eclipse Oil Co. Case, above cited, as was stated in Lowther Oil Co. v. Guffey, 52 W. Va. 91, 43 S. E. 101, and in Pyle v. Henderson, 65 W. Va. 41, 63 S. E. 762. But that $1 is not the only consideration; for the lease provides that the lessee shall drill wells, and from them pay royalty, or on failure to do that pay $90 per year. Lovett thus had the chance of getting returns in royalties, or in lieu of them, $90 each year. Until the lessee should exercise the right of surrender the rental was payable. The mere fact that this right of surrender existed does not deprive the lease of having a valuable consideration on which to rest. The oil company did not exercise that right, but year after year paid this rental. So that the lessee,

not exercising the privilege of surrender, paid large amounts as yearly rental, accepted by Lovett, and this was valuable consideration, in addition to the $1, and would bar Lovett from holding the lease a mere option without consideration, a mere estate at will determinable whenever Lovett chose. I say that the promise to develop and pay royalty is also valuable consideration, because trouble on the part of the lessee, damage of loss from failure to find oil, chance of development which might yield Lovett returns, and promise to pay money made consideration. Jackson v. Hough, 38 W. Va. 240, 18 S. E. 575. But aside from this there is valuable consideration."

Clearly, then, the Supreme Court of West Virginia is strongly against the defendant's contention, instead of on its side, as contended by him. Before proceeding with consideration of the other decisions relied on, it should be noted that they are, except those from Louisiana, largely built on the decisions relied on, which have already been considered. These latter decisions, as we have seen, do not support defendant's contention. The former, therefore, are without basis, so far as they are built on them.

We come, now, to a consideration of the Texas decisions. They are those of the Court of Civil Appeals in the cases of Roberts v. McFadden, decided in 1903, Guffey Petroleum Co. v. Oliver, decided in 1904, and Witherspoon v. Staley, decided in 1913. It is not necessary to go into any detail in stating the facts of these cases. It may be conceded that they support defendant's contention. The leases involved in the Roberts and Oliver Cases contained a surrender clause. That in the Witherspoon Case seems to have contained such clause, but it contained no agreement to explore, which is treated as the equivalent of an agreement to explore with a surrender clause. The surrender clause in the Oliver Case was not absolute, but only on payment of $2. The consideration recited in the lease in the Roberts Case was $1, the receipt of which was acknowledged, and in the Oliver Case $1 and the covenants and agreements therein contained. In the Witherspoon Case it was $25 cash paid. The decisions in these cases were based upon the Knight and Federal Oil Co. Cases from Indiana and the Eclipse and Daley Cases from West Virginia. In the Roberts Case it was held that parol evidence was admissible to show that the $1 consideration, recited as paid, had not in fact been paid. The court, through Gill, J., said:

"We can imagine no more glaring instance of a unilateral contract."

In the Oliver Case, through Garrett, C. J., it said:

"The provision in the lease that it may be surrendered by the defendant upon the payment of $2 makes it terminable at the will of the defendant, since the sum named is only a nominal consideration, and will not deprive the lease of such character. When the great value of the lease of the premises as oil-bearing land is considered, the trifling sum mentioned cannot be considered more than nominal. It is a well-established principle of law that, when it is provided in the lease that it is terminable at the will of one of the parties, it becomes terminable at the will of either."

And again:

"The only distinction observable between the cases just cited and the one under consideration is that the cited cases do not require the payment of a consideration for the exercise of the right to terminate the lease. But, as

above stated, the consideration named in the lease in this case is only nominal, and cannot be regarded as a valuable consideration."

In the Witherspoon Case, through Rice, J., it said:

"This contract was likewise a unilateral one, in that it did not bind or obligate the lessee to perform any of the conditions thereof, and was therefore lacking in mutuality."

Then comes the Tennessee decision relied on, to wit, Tennessee Oil Co. v. Brown, decided in 1904. It was a decision of the United States Circuit Court of Appeals for the Sixth Circuit, and went there from Tennessee. It is because of this that it is thought to lay down the rule for that state. In this connection there should first be considered the case of Petroleum Co. v. C. C. & Mfg. Co., supra, a decision of the Supreme Court of Tennessee, rendered in 1890, which is cited in some of the cases relied on by defendant as upholding his contention as justifying the position taken by them. The opinions in these two cases were each delivered by Judge Lurton. The instrument involved in the earlier case was a coal-mining lease for 99 years. The lessee agreed to commence testing the land within 3 years and to pay the lessor a certain royalty on coal discovered and worked in and upon said lands deemed advisable to be tested and worked by the lessee. The lessee did not do anything under the lease within the three years, and thereafter brought suit against the owner, who had opened up valuable coal mines on the land, to recover the coal right. It was held that he was not entitled to recover. The decision was placed upon the ground that, if there was an absolute agreement on the part of the lessee to test and work the land, he had lost his right by reason of an implied condition subsequent, and, if there was no such agreement he could not recover, because there was no consideration for the agreement. Concerning the latter position the court, through Judge Lurton, said:

"A fair construction of this lease would leave it optional as to whether the lessees should make any effort whatever to discover the mineral value of any particular lease, and, if 'tested' and minerals developed, it seems to depend upon their judgment as to whether such mines shall be worked. If they deem it advisable to 'test' a particular tract, they bind themselves to do so within three years. No other consideration for these leases is pretended than a share in the net profits resulting from such mines as they shall deem it 'advisable' to test and work. No penalty is agreed upon if they shall fail to 'test,' and no rent or other compensation is provided if they shall fail to work developed mines of minerals. If this construction be the right one, then these contracts, where actual mining has not been begun, are void for want of any consideration to support them. Some consideration must be either expressed or implied, or a lease, as any other contract, is void. If the compensation to be paid the lessor depends upon the profit to result from the development and working of a mine, and the lessee is not bound, either expressly or impliedly, to explore and discover, or, when discovered, to work such mine, then no consideration for the lease exists. It is a mere option, based upon no consideration, and may be withdrawn at any time before money is expended in doing what is optional upon the part of the lessee."

This implies that if there is consideration for such a grant—i. e., if the option is based upon consideration—it is not void, but is valid. This case, therefore, in its implication, is against the defendant.

The instrument involved in the Brown Case was a mineral lease.

The consideration therefor was $1, the receipt of which was acknowledged, and the agreements therein contained. The lessee agreed to make search, and, if mineral were found, to pay the lessor, within 5 years after the completion of a railroad to the lands, $10 a year until mining was commenced or during the continuance of the agreement. He also agreed to pay a certain royalty on minerals mined. It provided that the lessee should have the right to abandon the lands and mining at any time and remove all buildings and fixtures from the lands. No search was made until after the lapse of 15 years, and when made it was extremely superficial and valueless from any reasonable view, and nothing else was ever done under the lease. The lessee still claiming thereunder, suit was brought to remove the cloud from the title by virtue of this claim. It was held that the plaintiff was entitled to the relief sought. The only claim which the defendant asserted was that the lease was an outright conveyance of the mineral, and hence the title thereto could not be lost by mere nonuser or abandonment. It was held that it was not such a conveyance, but was a grant of the right to explore for minerals, and, if found, to produce and own them, and that all rights thereunder were lost by reason of a breach of an implied condition so to do. Judge Lurton concluded his opinion with these words:

"But, independently of any other ground, the general provision of this lease, authorizing the lessee to abandon whenever he should see fit, makes it a lease at the will of the lessee. An estate terminable at the will of one of the parties is determinable at the will of either, though it purports to be terminable at the will of one only. 1 Washburn, Real Property, 371 (side paging); Taylor's Landlord & Tenant, § 14; 18 Am. & Eng. Ency. of Law (2d Ed.) 182."

I do not have access to Washburn. There is nothing in Taylor, so far as I can find, to the effect that a grant for a valuable consideration to one of an estate to be held at his will is at the will also of the grantor. In the Am. & Eng. Ency. of Law it is said:

"A lease at the will of one of the parties is equally at the will of the other party. The law does not recognize a tenancy at the will of one of the parties merely, but implies that it shall be also at the will of the other party."

The decisions cited in support of this statement are largely certain of those heretofore considered. In view of what I have said, it is not a discriminative presentation of the law on the subject. What Judge Lurton thus said indicates that he, too, great judge though he was, under the spell of a formula or epigram. The case did not really call for any such position; and his statement was in conflict with the implication of what he had said when a member of the Supreme Court of Tennessee. It cannot, therefore, be justly claimed that defendant's position is favored by decisions from Tennessee.

The Louisiana decisions, which come next, are the cases of Murray v. Barnhart, decided in 1906, Goodson v. Vivian Oil Company, decided in 1912, and Long v. Sun Co., decided in 1913. These decisions are clearly to the effect that a surrender clause invalidates an oil and gas lease. But they are without value here. This is because the civil law prevails there, and under that law a contract cannot be upheld by any

valuable consideration. To uphold it the consideration must be a serious one. In the Murray Case, the Supreme Court of that state, through Provosty, J., said:

"At common law 'the slightest consideration is sufficient to support the most onerous obligation. The inadequacy, as has been said, is for the parties to consider at the time of making the agreement, and not for the court when it is sought to be enforced.' 9 Cyc. 365. But under our law the consideration 'must be serious'; 'it must not be out of all proportion with the value of the thing.' Article 2464, Civ. Code."

And again it said:

"This difference between the common and the civil law, with reference to the sufficiency of a mere nominal consideration for supporting a contract, distinguishes this case from that class of cases to be found in the reports of other states, of which the case of Brewster v. Lanyon Zinc Co., 140 Fed. 801 [72 C. C. A. 213], cited in defendant's brief, is an example, in which contracts like the present one have been held to be valid, notwithstanding the faculty accorded to the lessee to retire from the contract at any time, with or without a nominal payment. At common law, the $1 consideration being of itself sufficient to support the contract, it can make no difference that the lessee is allowed to retire at any time. The situation is precisely as it would be under our law in the case of a lease, where the lessor had paid the rent in advance for the entire term of the lease, when it could make no difference whether he was allowed the privilege of throwing up the lease at any time he pleased, so long as he did not demand the return of any part of the payment he had made."

In the Goodson Case, through Land, J., it said:

"In the case at bar, there is no obligation on the part of the lessee to exploit the land for oil and gas, and there is no consideration for the reserved right to terminate the lease at any time, in the event of the finding of oil and gas in paying quantities. The plaintiff had the legal right to treat the agreement as a nudum pactum, and to refuse the gratuity tendered by the defendant. * * * The Louisiana cases cited by the learned counsel for the defendant do not cover a case of this kind, where there is no obligation to exploit the land, and no consideration for the right to terminate the contract at any time. The civil law requires a serious consideration, while the common law is content with a nominal consideration."

These Louisiana decisions, therefore, instead of favoring defendant's contention, are inferentially against it. They recognize clearly that, if the common law prevailed in that state, the Supreme Court thereof would hold that an oil and gas lease with a surrender clause in it is valid.

We come, then, to the Oklahoma decisions. They are the decisions of the Supreme Court of that state in the cases of Superior Oil Co. v. Mehlin and of Kolachny v. Galbreath, both decided in 1910. In the Mehlin Case no oil and gas lease was directly involved. What was involved therein was a contract to make such a lease. It was a suit to enforce specific performance of such a contract, brought by the lessee in the proposed lease against the lessor therein. Being such a suit, of course, the principles applicable to such a suit applied there. The consideration for the contract to make the lease was $600 of the capital stock of the lessee and $300 which had been expended in drilling a well, which would seem to have been a past consideration. The lease which had been agreed to be made recited as the consideration

therefor $1 and the covenants therein contained. The right granted was for the term of 15 years and as long thereafter as oil or gas was produced. The covenant to begin exploration was within 15 years, and if it was not commenced within that time the lessee was to pay the lessor $——— in advance for each additional year such commencement was delayed from the end of the term until a well was completed. The specific performance of the contract was denied, because the lease was considered an unfair one, in that the lessee could postpone exploration for 15 years without paying anything for such postponement, and thereafter by the payment annually in advance of an unspecified sum. This decision, of course, has no pertinency here. In the Kolachny Case an oil and gas lease was involved. It was a suit by the lessee thereunder against the lessor and the lessee in subsequent lease for an injunction. It contained a surrender clause. The relief sought was denied because of such clause. The court, however, did not hold that the lease was invalid because of such clause. Assuming that the suit was one for the specific performance of a contract, the court denied the relief because of a principle applicable to such suits. The Supreme Court, through Williams, J., said:

"It is not essential to determine in this case as to whether such an option would be valid at law; it being obvious that under authorities heretofore cited, which seem to be supported by reason, equity will not decree that one party specifically perform a contract which the other party at its option may refuse to carry out. After the relief by decree should be granted to each party, he then, under the cancellation clause of the lease, would have it within his power to nullify the decree by exercising his right thereunder not to proceed further. A court of equity will not do a vain and useless thing by rendering a decree settling the rights of the parties which one of them may at will set aside."

In taking this position, it followed the Supreme Court of Illinois, which, as we shall see, holds that an oil and gas lease with a surrender clause is valid at law and not subject to cancellation in equity, but because thereof refuses to grant any relief in equity to the lessee against the lessor, which position it has taken on the assumption that such a suit is one for the specific performance of a contract. This decision, of course, has no pertinency here. The question is whether the lease is invalid because of the surrender clause. These Oklahoma decisions, therefore, do not favor defendant's contention.

There remains to consider the decision of the Court of Appeals of Colorado in the case of Davis v. Riddle, decided in 1913. It is without pertinency here. The lease was canceled because rights under it had been forfeited, and it was not, properly speaking, a lease, but a lease option, for which no consideration had been given.

The result, then, of the extended consideration of the decisions relied on by defendant is that in none of the eight states referred to can it be said that it is now the law that an oil and gas lease with a surrender clause is invalid, except in the states of Texas and Louisiana, whereas in Indiana and West Virginia it is certainly the law that they are valid. There is no ground whatever for claiming that it is invalid in the states of Virginia, Tennessee, Oklahoma, and Colorado. And though it is invalid in Louisiana, it is clearly recognized by

the Supreme Court thereof that, if the common law prevailed therein, it would have to be held that it is valid. So far as the state of Texas is concerned, the decisions of its Court of Civil Appeals show that the matter has not been gone into very deeply.

On the other hand, we find that, in addition to its having been held in the states of Indiana and West Virginia that such a lease is valid, it has been so held in the states of Pennsylvania, Ohio, Illinois, and Kansas, and by the Supreme Court of the United States. The Supreme Court of Pennsylvania upheld a lease containing such a clause in the case of Marshall v. Forest Oil Co., 198 Pa. 83, 47 Atl. 927. This was also done by the following Ohio decisions, to wit: Allegheny Oil Co. v. Snyder, supra; Brown v. Fowler, 65 Ohio St. 507, 63 N. E. 76; Central Ohio Nat. Gas & Fuel Co. v. Eckert, 70 Ohio St. 127, 71 N. E. 281. The first of these decisions was by the Circuit Court of Appeals for this circuit in 1900. The case went there from Ohio. The lease there involved, which was held to be valid, contained a surrender clause. No point was made of the clause as rendering the lease invalid. The other two, by the Supreme Court of Ohio, were rendered in 1902 and 1904, respectively. In the Brown Case that court, through Burket, J., said:

"This surrender clause is an option, intended to enable the lessee to terminate the lease before the end of the term, if it shall appear that there is no oil or gas in that territory. Under this clause the lessee can terminate the lease before the end of the term by surrendering the lease, and under the defeasance clause he can do the same by failing to drill a well and failing to pay for further delay. The right to terminate the lease in either of said ways is a valuable right to the lessee, and he paid for both by paying the $1 mentioned as the consideration for the whole lease. Such options in contracts are sustained by courts. Thayer v. Allison, 109 Ill. 180; Oil Co. v. Crawford, 55 Ohio St. 161, 44 N. E. 1093, 34 L. R. A. 62. The error of construing a condition subsequent, or an option, as creating the term of the lease, when that has been created by the granting and habendum clauses, has caused many decisions to be rendered whose soundness may well be doubted. This clause gives the lessee his option, and for which he has paid, to hold the lease to the end of the term, or surrender it sooner. It is always the right of a person holding an option for which he has paid to surrender it before the expiration of the time, or to hold it for the full time; but the person who gave the option cannot compel a surrender before the expiration of the full time."

And again:

"It is also urged by counsel for defendants in error in both cases that the lease is void for want of mutuality. Granting that the lease was made for the purpose of operating thereon for oil and gas, and that an exclusive right to so operate was granted to the lessee, there is no want of mutuality. The lessee on his part paid $1, of which the lessor acknowledged receipt, and the lessee on his part made the demise, and because the lessor has performed his part in full, and does not promise to do anything further, it is claimed that there is no mutuality—the claim being that mutuality requires that an obligation must rest on each party to do, or permit to be done, something in consideration of the act or promise of the other. This is too narrow a definition of mutuality One party may perform his part in full at the making of the contract and thereafter have nothing to do, or permit to be done, having already done his part, and the other party, in consideration of what has thus been done, binds himself to do, or permit to be done, something in behalf of the party who has thus fully performed. A promise to perform can be no stronger than performance itself; and where one party promises to perform

his part of a contract, and the other performs his part at the making of the contract, both are bound, and there is mutuality. The one who has performed is bound to permit his performance to stand, and the one who has not performed is bound to perform his part, so that both are mutually bound. Performance on part of one will sustain a promise to perform on the part of the other. Where there is no performance and no promise to perform on one side, a promise to perform on the other side is without consideration and without mutuality, and such a contract can be held void on either or both grounds. In this lease the lessee paid $1 for the lease, for the exclusive right to operate for oil and gas, and thereby fully performed his side of the contract; and the lessor granted that right under the terms and conditions of the lease, and thereby a contract was made, and the party on one side received the $1 in full, and the party on the other side received the demise, and then both were mutually bound, and both had to trust to the future for the realization of the purpose for which the lease was made. So that there is no want of mutuality, and in that respect the lease is valid."

The Supreme Court of Illinois held such a lease valid in the case of Poe v. Ulrey, 233 Ill. 56, 84 N. E. 46. That was a suit in equity, and the relief sought was a cancellation of the lease. The court, through Cartwright, J., said:

"Another ground upon which it is contended that the circuit court came to a correct conclusion is that there was a want of mutuality between the parties, because the lease contained a surrender clause by which appellees were permitted, upon the payment of $1 to appellants, to surrender the lease for cancellation. It is argued that this provision made the lease a tenancy at will, and also one-sided, harsh, unjust, and therefore void. So far as the charge that the contract was harsh and unjust is concerned, it may be said that the parties were competent to contract with each other, and neither side can be relieved from their agreements on the ground that they did not use good business judgment in entering into the contract. There is no question of fraud, and no charge or evidence of fraud, in the case, and where parties, who are competent in law and in fact to enter into contracts, freely and voluntarily contract with each other, it is of the utmost importance to them, and the public as well, that their agreement shall be respected and enforced by the courts, and that neither shall be relieved from the obligation of his contract except upon some certain ground deemed valid by the law. The surrender clause in this lease gave to the lessee an option to surrender it before the expiration of the term, but it did not give to the lessors any option to compel a surrender. Such options and contracts are not invalid in the law (Thayer v. Allison, 109 Ill. 180), and they do not create a tenancy at will."

That court, however, holds that the lessee in such a lease is not entitled to relief in equity, at least as against the lessor, before he has performed, or come under obligation to perform, his part of the contract. This is because of such want of mutuality, and this is because the nature of such a suit is taken to be a suit for specific performance, and hence subject to the doctrines applicable to such a suit. This it did in the cases of Watford Oil & Gas Co. v. Shipman, 233 Ill. 9, 84 N. E. 53, 122 Am. St. Rep. 144; Ulrey v. Keith, 237 Ill. 284, 86 N. E. 696. In the Supreme Court, through Vickers, J., it said:

"The option of appellant to terminate the lease at any time upon payment of $1 deprives appellant of the right to specific performance, directly or indirectly, until it has performed the contract or placed itself in such position that it may be compelled to perform the contract on its part. If the relief here sought should be granted, appellant, under the cancellation clause of the lease, may nullify the decree by exercising its option not to proceed further. A court of equity will not do a vain and useless thing, by rendering a

decree settling the rights of parties which one of them may set aside at his will."

It reiterated its position that the lease was valid, notwithstanding such clause, in these words:

"While the power of revocation reserved in this lease has the effect of depriving appellant of equitable remedies in the nature of a specific performance, still the contract is not void for want of mutuality. The reservation of the right to cancel is not an infirmity which renders the contract void ab initio, but it deprives the party for whose benefit it is made of relief in equity in the nature of a specific performance."

The position that the suit was one for specific performance of a contract was an error. It was due to the failure to recognize that, so far as the grant for exploration purpose was concerned, the lease was an executed instrument. It granted an estate in possession for such purpose. Hence the suit was not a suit for specific performance, but one to prevent waste; and the right to maintain it depended solely on whether there was an adequate remedy at law. That the lessee has the right to turn his interest back to the lessor is no reason why equity should not protect it, so long as he holds onto it, and that even as against the lessor. That court so viewed the suit in case of Gillespie v. Fulton Oil & Gas Co., 236 Ill. 188, 86 N. E. 219. The suit there was against a rival lessee. The lease involved did not contain a surrender clause, unless the provision that the lessee had the right to remove all its property at any time amounted to one, and the court took no note of it as such. It was held that the plaintiff was entitled to equitable relief. The court, through Vickers, J., said:

"The contention that appellant has a complete remedy at law is untenable. Ejectment will not lie. * * * Equity has jurisdiction to prevent waste and irreparable injury at the suit of an assignee of an oil and gas lease against an adverse lessee."

That this position was erroneous, and the federal court for that state was not bound by it, was held by the Supreme Court in the case of Guffey v. Smith, supra. Suffice it to say that the position of the Supreme Court of Illinois is that such a lease is valid, and that is the sole ground upon which it is relied on here.

The Kansas decisions are those in the cases of Brewster v. Lanyon Zinc Co., 140 Fed. 801, 72 C. C. A. 213, and Pittsburg V. P. & B. B. Co. v. Bailey, 76 Kan. 42, 90 Pac. 803, 12 L. R. A. (N. S.) 745. The Brewster Case, decided in 1905, went to the Circuit Court of Appeals for the Eighth Circuit from Kansas. That court, through Judge Van Devanter, in referring to the instrument there involved, said:

"True, it was made and accepted upon certain conditions, one of which is that the premises may be reconveyed at any time at the option of the lessee; but that does not make the estate which it creates a mere tenancy at will within the operation of the common-law rule that an estate at the will of one party is equally at the will of the other. That rule is without application to a lease for a defined and permissible term, but which reserves to the lessee an option to terminate it before the expiration of the term. * * * The option reserved to the lessee was not designed to convert the estate, as otherwise defined, into a mere tenancy at will, or to make it determinable at any time at the option of the lessor. The lease expresses the intention of the

parties, and, no rule of law forbidding, that intention is controlling. The consideration of $1, the receipt of which was acknowledged, although small, was yet sufficient to make the lease effective and to support every stipulation in it favorable to the lessee, including the option to surrender it at any time. * * * Resting, therefore, upon an executed and valuable consideration, the lease was not wanting in mutuality merely because it reserved to one party an option which it withheld from the other."

In the Bailey Case, decided in 1907, the Supreme Court of Kansas, through Smith, J., said:

"It may be conceded that it is an option contract, yet it does not follow that it can be revoked at pleasure by either party thereto. It is of the very essence of an option contract that one party has the choice of concluding or not concluding the proposed transaction, while the other party has no choice. He undertakes for a certain consideration to do a certain thing, or to permit the other party to do a certain thing, within a certain time on the demand of the other. This right of choice is what the other pays for."

And again:

"Considered as an option, it was bought and sold for a valuable consideration, and the purchaser is entitled to what it bought."

The decision of the Supreme Court of the United States is that of Guffey v. Smith, heretofore referred to, and quoted from. It is true that, as the validity of the lease there involved was a local question, the Supreme Court was bound by the position of the Supreme Court of Illinois, from which state the case came, that the lease was valid. But it is clear from the opinion, which was written by Mr. Justice Van Devanter, who wrote the opinion in the Brewster Case, that the Supreme Court had no doubt as to the validity of the lease on the merits of the question.

We approach, then, the question as to how the matter stands in this state under the decisions of the Court of Appeals of Kentucky as to the validity of the leases here involved, which decisions are controlling, with the personal conviction that, on the merits of it, there can be no possible doubt as to their validity, and with the showing made that authority elsewhere overwhelmingly sustains their validity. In view of this, one would be loth to find it otherwise here. This consideration, however, should not blind him as to the true state of things. The decisions which have been cited as having a bearing on the question are those in the following cases, to wit: Litz v. Goosling, 93 Ky. 185, 19 S. W. 527, 21 L. R. A. 127; Steinwender v. Guenther Gro. Co. (Ky.) 80 S. W. 1170; Lowe v. Ayer-Lord Tie Co. (Ky.) 97 S. W. 383; Schamberg v. Farmer (Ky.) 37 S. W. 152; Armitage v. Mt. Sterling Oil & Gas Co. (Ky.) 80 S. W. 177; Berry v. Frisbie, 120 Ky. 337, 86 S. W. 558; Bay State Pub. Co. v. Penn L. Co., 121 Ky. 637, 87 S. W. 1102; Monarch Oil & Gas Co. y. Richardson, 124 Ky. 602, 99 S. W. 668; Flanagan v. Marsh (Ky.) 105 S. W. 424; Young v. Mc-Illhenny (Ky.) 116 S. W. 728; Breckenridge A. Co. v. Richardson, 147 Ky. 834, 146 S. W. 437; Eastern Ky. M. T. Co. v. Swann Day L. Co., 148 Ky. 82, 146 S. W. 438, 46 L. R. A. (N. S.) 672; Killebrew v. Murray, 151 Ky. 345, 151 S. W. 662; Soaper v. King, 167 Ky. 121, 180 S. W. 46.

The cases relied on by the defendant are the cases of Litz v. Goosling, Steinwender v. Guenther Gro. Co., and Lowe v. Ayer-Lord Tie Co., which did not involve oil and gas leases, and are cited only for the general principles of law which they recognize and apply, and the cases of Berry v. Frisbie, Young v. McIllhenny, Killebrew v. Murray, and Soaper v. King, which did involve such leases. The cases of Steinwender v. Guenther Grocery Company and Lowe v. Ayer-Lord Tie Company are but illustrations of the proposition stated in 9 Cyc. 327, heretofore quoted, which amounts to this, to wit, that in case of a contract made up of mutual promises, each the consideration for the other, i. e., a bilateral contract, where one of the promises is not absolute, but to be performed only if the party making it so wills, or one with a promise on but one side and no consideration therefor, the one who makes the absolute promise in the one case and the sole promise in the other is not bound to perform. In giving the reason why he is not so bound, it is frequently said that it is because of want of mutuality of obligation. The real reason therefor is that there is no consideration for such promise. This is so as much in the one case as in the other, for the promise in that case which purports to be the consideration for the other is really no promise at all, as it depends on the will of the promisor whether or not he will perform it. And it is unfortunate and misleading that the reason is said to be want of mutuality of obligation. For there are cases of want of such mutuality where a promise is binding, as, for instance, in the case of an option given for a valuable consideration, and a valid unilateral contract. This matter is dealt with in 6 R. C. L. p. 686. These two cases have no application here, because there is no such want of mutuality as was fatal therein.

The case of Litz v. Goosling seems to have been based on the same ground, and hence so far is not applicable here. But there were two aspects of that case which were not considered. One was that there was a binding contract between the parties by reason of the fact that the offer of the vendor—if it be treated that he did no more than make an offer, which was not binding on him—was accepted before the offer was withdrawn. In so far as the case can be construed as holding to the contrary of this, it was disapproved in the case of Murphy-Thompson Co. v. Reed, 125 Ky. 585, 101 S. W. 964, 10 L. R. A. (N. S.) 195, 128 Am. St. Rep. 259. The other is that there was a binding option on the part of the vendor to permit his offer to remain open during the time specified in the contract, the consideration for which was $1. No more notice was taken of this aspect of the case than of the other. But there was no real occasion for taking notice thereof, if in fact the offer was accepted before it was withdrawn. That rendered it immaterial whether the option was binding. Though withdrawable as not binding, it had not in fact been withdrawn before it was accepted. This aspect of the case may have some bearing here. Because thereof it may be thought to indicate that it is the position of the Court of Appeals of Kentucky that $1 is not a sufficient consideration to render a contract valid. It will be noted that there was no recital that the $1 had been paid. But this may be of no consequence. The most, then, that can be claimed that this case stands for which is applicable

here is that $1 is not a sufficient consideration to uphold an option for the sale of real estate. What was agreed to be sold there was the coal in 1,000 acres of land for $1 per acre, and the suit was brought to enforce specific performance of the contract of sale. The following cases would seem to be in line with this, to wit: Murphy-Thompson Co. v. Reed, supra. Noble v. Mann (Ky.) 105 S. W. 152; Stamper v. Combs, 164 Ky. 733, 176 S. W. 178.

The Murphy-Thompson Co. Case was also a suit to enforce specific performance of a contract for the sale of coal for $5 an acre, claimed to have grown out of an option, the consideration for which was $1, paid by the acceptance of the offer to sell. It was held that the contract had been entered into, and the relief sought was granted. The court, through Judge O'Rear, had this to say concerning the $1 being a sufficient consideration to uphold the option:

"The consideration for the agreement to give the optionee the definite time within which to exercise his choice, called the 'option,' is in these cases the $1 recited. It might have been more, or an entirely different consideration. Though there are authorities holding a consideration of $1 as sufficient to uphold such an agreement, we are not disposed to go so far. Such consideration is so flagrantly disproportionate to the value of the privilege in these cases—the options extending over a year—that it is merely nominal. It is not substantial, and the parties could not have regarded it as in any sense an equivalent of the privilege which was being contracted for. While upon demurrer the courts will be slow to say that a recited consideration is no consideration, if it has any appearance of having been regarded by the parties as the agreed value of the thing contracted for, where the stated consideration is so manifestly inadequate and disproportionate to the value of the thing being sold (the privilege or option) as to represent no value, or only a nominal value, it will be construed on demurrer, as a matter of law, as not having a consideration at all. If there is doubt about the matter, then the question of its value or adequacy is a defense to be pleaded. An option, to be binding upon the owner, in the sense that it is irrevocable upon him during the period for which it was given, must be upon a valuable and sufficient consideration. It may consist in money paid or to be paid for it, or in property, services, or counter benefits accruing to the owner, or disadvantage incurred by the optionee. In short, it may be such consideration as will support any other sort of contract. In this view of the matter, the options in these cases were not supported by sufficient consideration to have bound the owners not to withdraw them during the term for which they were given. They could have been withdrawn before acceptance, without liability to the givers of the options. But, as they were not withdrawn, they constituted, instead of binding options, voluntary offers to sell, which, like any other valid offer, were, when accepted, binding upon the person making them."

It will be noted that what is said on this subject is purely obiter. As the offer had been accepted before it was withdrawn, it was immaterial whether there was a consideration for the offeror's agreement to keep it open, which constituted the option, as the opinion itself notes in its criticism of the Litz Case. In view of this it is no more than that case a controlling authority on the point.

The Noble Case was an action to recover damages for breach of an option to purchase a tract of land for $3 per acre, the consideration for which was recited to have been $1 paid. It was held that plaintiff was not entitled to recover. The court, through Judge O'Rear, said:

"The contract sued upon was an option without consideration. Mann had the right, at any time before its terms were complied with by the optionee

[appellant], to withdraw the proposition contained in it. His sale and conveyance to Little was a repudiation of his option, and, as he had the right to withdraw it, it does not matter what his motive was, nor as to Little's knowledge of its terms."

The case involved the question whether $1 was a sufficient consideration to uphold such an option, and it held that it was not.

The Combs Case was an action to set aside a conveyance of the timber on a 300-acre tract of land, the consideration for which was $150 cash and the delivery up of an option to purchase the tract of land for $5 an acre, which had been given in consideration of $1 actually paid, on the ground of fraud. Concerning the option the court, through Hurt, J., said:

"This is no substantial consideration to support a contract giving one six months' time in which to determine whether he will accept an offer to purchase 300 acres of land in a community where values are rising rapidly. It is merely nominal."

And again:

"The option being a mere offer to sell, and the contract to keep the offer open for acceptance for six months being without substantial consideration, the appellees could withdraw the offer and repudiate it at any time, by conveying notice of their repudiation of it to the holder of it, before its acceptance, and thereafter the holder would be without authority to accept or exercise it."

Possibly it may be said that the question of the $1 consideration for this option was necessarily involved in the case, but it is not entirely certain.

These four cases then—i. e., the Litz, Murphy-Thompson Co., Noble, and Combs Cases—justify, perhaps, the position that $1 is not a sufficient consideration to render valid an option for the purchase of real estate. They certainly go no farther than this.

Coming, then, to the Kentucky cases involving oil and gas leases relied on to support defendant's contention, the first to be considered is the Frisbie Case, decided in 1905. The instrument involved in that case, considered by itself, was a mere option. By it the landowner offered to grant the oil prospectors the right for 2 years to explore for oil and gas, and, if found, to convey to them by deed the right to produce and make their own the oil and gas so found, paying him certain royalties, and, in consideration of $1 paid, the receipt of which was acknowledged, agreed to keep this offer open for acceptance for 4 months thereafter. Assuming the $1 to be a sufficient consideration to make such agreement binding upon the landowner, the prospectors had the option for 4 months in which to accept the offer, and during that time the landowner had no right to withdraw it. By an acceptance thereof within the 4 months, without more, the prospectors would have the right for 2 years to explore for oil and gas, and, if found, to such a deed, and the prospectors would come under an obligation to explore and to produce. And even though the $1 was not sufficient consideration to make such agreement binding, if in fact the offer was accepted within the 4 months before it was withdrawn the same result would follow as held in the Murphy-Thompson Co. Case. In either

contingency, by the acceptance of the offer within the required time the parties would come into a binding contract relation between themselves. So far as the right to explore was concerned, the contract would be executed. Thereupon the prospectors would become vested with the right to explore for 2 years. So far as the right to produce and make their own oil and gas which should be found, it was purely executory. The instrument contemplated and provided that another instrument, to wit, a deed, should be executed conveying such right. The offer was accepted in the 4 months and the result stated followed. Before the expiration of 2 years thereafter the prospectors demanded the deed called for by the contract, and, the landowner refusing to execute it, they brought suit to compel him to do so. The suit, therefore, was a suit for specific performance of this contract so entered into. By the terms of that contract the prospectors were not entitled to the deed unless they had explored the land and found oil or gas in paying quantities. As a matter of fact they had done no exploration on the land covered by the contract whatever. They had sunk five wells on an adjoining tract of land, and claimed to have found there oil and gas in paying quantities, and one of them claimed further to have satisfied himself that there was oil in the land by the use of a forked hazel switch, called a "water witch," through the means of which he could unerringly determine the presence of oil in the land. But this did not meet the condition precedent, whose happening was essential to entitle the prospectors to a deed under the contract. That was that oil or gas should be found in the land by exploring it, and that had not been done. Besides, the deed itself, if given, could do no more than convey a right to explore which the prospectors already had. There could be no vested right to produce and make their own until those substances, or either of them, were found by exploration to be there. The court held, and that properly so, that the plaintiffs were not entitled to the relief sought, and this on the ground that the condition precedent, on the happening of which they were to be entitled to the deed, had not happened.

All the case stands for, therefore, all that it is possible for it to stand for, is that, if a landowner binds himself by an executory contract to make a deed to another for the right to produce and make his own oil and gas, which he may by exploration find therein, such other person will not be entitled to such deed until he has in this way found such to be the case. The court, however, did not confine itself to this, the only question really in the case, but considered another one. It was whether, if by the acceptance of the offer the prospectors did not come under an obligation to explore and produce, what would be their rights in that contingency. This question was outside of the case, for the court held that they did come under such obligation. Seemingly it was held that they would have none. And it would seem that the question was really, if not actually, so treated, the same as if it had been whether a lessee in an oil and gas lease has any enforceable rights under a lease, the sole consideration for which is $1 in cash paid, granting him the right to explore and to produce and make his own, where there is no agreement on his part to explore and produce, but

which benefits it would have to be held were secured to him by a condition subsequent, and that effectively. Two reasons were given by the court, through O'Rear, J., for this negative answer—one in these words:

"Such contracts lack the mutuality essential to their validity. A unilateral executory contract is in law a nudum pactum, and is unenforceable. Where it is left to one of the parties to an agreement to choose whether he will proceed or abandon it, neither can specifically enforce its execution in equity."

This quotation consists of three sentences. Take the first one: What mutuality is essential to the validity of contracts? This question is answered by Judge O'Rear in the Murphy-Thompson Company Case, where the court, through him, said:

"It is generally said that one essential of every executory contract is mutuality of obligation and remedy. That there must be mutuality of obligation, · by which is meant an undertaking on one side and a consideration upon the other, is true always."

In other words, wherever there is an undertaking on one side and a consideration for it on the other, there is mutuality. If so, where there is no undertaking on either side, and the contract is executed on both sides, there must be mutuality, if not mutuality of obligation. In such a case there is no mutuality of obligation, because there is no obligation on either side. Such is the case as to a lease of the kind supposed. The lessor on his side grants the lessee the right to explore and produce, and the lessee on the other pays him $1 therefor. It is not true that in such a case the mutuality essential to the validity of the lease is lacking.

Take the next sentence. It is not true that every unilateral executory contract is in law a nudum pactum and is unenforceable. Binding executory contracts are divided into two classes, bilateral and unilateral. And a unilateral contract may be as binding as a bilateral one; i. e., if it has a consideration to support it. That is recognized in the quotation made from the opinion in the Murphy-Thompson Co. Case and in this additional quotation therefrom:

"An option to sell is a standing offer to sell to the person and upon the terms named in the option, and an agreement to keep the proposition open for acceptance for the time stated. If its terms are fair, and have been understandingly entered into [it may be added if a valuable consideration is given therefor], there appears no reason why it should not be enforced, if accepted and offered to be complied with by the payment of the consideration within the time stipulated."

And such an option is an instance negativing also the correctness of the third sentence. The case of Bacon v. Kentucky Central Ry. Co., 95 Ky. 373, 25 S. W. 747, is a case where an agreement coming within the terms of that sentence was specifically enforced. In support of this statement there was cited the Litz and Federal Oil Company Cases, both of which have already been considered and their value determined, concerning which, therefore, no more need be said here, and the case of Marble Co. v. Ripley, 10 Wall. 339, 19 L. Ed. 955, a case which figures a great deal in cases elsewhere and in Kentucky relied on by the defendant. That was the case of a bilateral contract,

and doctrines applicable to the enforcement of a bilateral contract have no place whatever in determining the rights of a lessee under such a lease.

The other reason referred to is put in these words:

"Nor is the recited consideration of $1 sufficient to uphold an action for the specific enforcement of a contract otherwise unsupported by consideration."

In support of this the Federal Oil Company Case is cited. As in the case supposed a suit to protect the lessee's rights is not a suit for the specific enforcement of a contract, but a suit to prevent waste, this statement has no relation to such a suit, even if it be true, which it seems to imply, that in no case will a contract be specifically enforced where $1 is the only consideration therefor.

I have given so much space to this case because it is the principal one of the cases relied on by defendant, and in so far as the other three tend to support his contention it is largely due to this case. We have found that, in so far as the discussion in the opinion has bearing on the question involved here, it had nothing to do with any question involved in the case, is inaccurate in its statements, as appears from a close consideration of them, and as shown by the later Case of Murphy-Thompson Co., and is based upon decisions that either have no relation to the question discussed or have been discredited in the jurisdiction where rendered.

The next case for consideration is the Young Case. The leases there involved contained surrender clauses. They were made in consideration of $1 and the covenants and agreements therein contained. There was no provision prescribing how long the rights granted were to last. The only express agreements on the part of the lessee which they contained was as to the payment of royalties. There was no such agreement to explore. The sole provision as to exploration was that, if no well was commenced in one year, the grant should become null and void unless the lessee should pay an annual rental for each year thereafter commencement thereof should be delayed. The lessee did nothing under the leases, and the lessor sued him for 2 years' rent. It was held that he was not entitled to recover. The ground of the decision was that the lessee had not agreed to pay the rental. The court, through Judge Lassing, said:

"But the plain language of the leases shows that, if no well is commenced within one year, the leases become null and void. Thus the failure of the lessee to commence operations within a year cancels the leases, and the only way their cancellation can be avoided is by the lessee paying $125 to continue them in force for another year; or, expressing it in another way, these leases are simply options given by the lessor to the lessee for one year, with the right to renew the options at the end of the year upon the payment of $125, if the lessee has not commenced operation thereunder within the 12 months. There is nothing in either the leases or the contract binding the lessee to do anything. He has the exclusive right to bore for oil or gas upon the premises described in the leases for 12 months, and if he fails to exercise this right, such failure, of itself, operates to cancel the leases. The right to bore for either oil or gas is purely optional with the lessee; the lessor is bound, but the lessee is not. There is nothing in the leases or the contract upon which the lessor could base an action for specific performance; under neither the leases nor the contract could he compel the lessee to commence operations, or to continue them after he had commenced."

The case, therefore, did not involve the question whether the lessee had the right to drill a well during the year, or thereafter, if he paid or tendered the annual rental, or anything as to the validity of the leases. No such question was in the case. Notwithstanding this, it was held that the leases were void for want of mutuality, and the Litz, Steinwender, Lowe, and Frisbie Cases were cited in support of this position, which decisions, as has been shown, have no bearing whatever on the validity of the leases.

Then comes the Murray Case. The instrument involved there was a phosphate lease. It was made in September, 1908. The grant was for the term of 10 years and so long as phosphate or phosphate rock should be found in paying quantities. The consideration therefor was $1 and covenants therein contained. It contained no agreement as to exploration. The covenant as to royalty was to pay 25 cents per ton for the phosphate when mined and removed, and to pay a minimum of $5 per annum, whether the lands were mined or not, to be considered an advance on royalty due for phosphate thereafter mined. The lease contained no surrender clause, strictly so called. But the fact that there was no agreement on the part of the lessee as to exploration, and that it was provided that he might terminate the lease any time he determined that the land did not contain phosphate in paying quantities, would seem to have been treated as the equivalent of such a clause, and the case will be valued as if it did contain it. Nothing was done under the lease by the lessee, except to pay the first year's installment of minimum royalty. Subsequent royalties were tendered, but refused, because of the lessee's failure to begin work under the lease. After the lapse of $3\frac{1}{2}$ years the lessor brought suit to cancel the lease, and it was held that she was entitled to that relief. It was clear that she was entitled to the relief on the ground that all rights under the lease had been forfeited by reason of breach of an implied condition subsequent, to wit, that work under the lease should be commenced in a reasonable time. It was shown in evidence that at the time the lease was executed the lessor was assured that the work of getting out phosphate would be begun within a year or 18 months. But even if the lessee had 10 years in which to commence work by paying the $5 a year royalty, nothing else appearing, under the decision in the case of Monarch Oil & Gas Co. v. Richardson, supra, the lessor had the right at any time to call on the lessee to begin work, and, if he did not thereupon promptly do so, his rights under the lease would be forfeited, and this she did when she refused to accept payment of any minimum royalties after the first one. The court held that she was entitled to relief on this ground. It held, also, that she was entitled thereto on the ground that the lease had been obtained by fraudulent representations; and it noted the fact that it had been shown in evidence that the $1 consideration was not recited to have been paid, and it was proven that in fact it had not been paid. The court, however, did not stop here. It held that the lease was void for want of mutuality, and that, as it was terminable at the will of the lessee, it was also terminable at the will of the lessor. It ad-

vanced the opinion that it was not an executed contract. Through Judge Settle it said:

"We do not concur in the conclusion of appellants' counsel that the contract in question is an executed contract. In our opinion it must be classed as an executory contract merely. Under it nothing had been done; everything required by its terms of appellants was to be thereafter done. All that it required of appellee was that she should furnish the land, and this was done when the lease was executed. On the other hand, what it required of the appellants—payment of the consideration, mining of the land for phosphates, accounting to the appellee for the royalties—was to be thereafter done in fulfillment of the contract. The insignificant $5 per year it obligates appellants to pay appellee, whether the land is mined or not, is not of itself sufficient to place the lease in that class of contracts known as executed contracts."

The fact that nothing had been done under the lease did not render it executory, no more than the fact that nothing has been done under an ordinary lease renders it executory. But it was said that, whether executed or executory, it was void for want of mutuality. In support of this position—that it was void for want of mutuality—the Frisbie and Young Cases were cited. And in support of the position that the lease was terminable at the will of the lessor, because terminable at the will of the lessee, the Brown Case from the Appellate Court of this Circuit was cited. The statement heretofore quoted from Judge Lurton's opinion therein to this effect was quoted, and the authorities relied on by him were also cited. These positions were all clearly unsound, as I have heretofore endeavored to show, and it is not necessary that what has been said along this line be repeated here.

Finally comes the King Case. It involved an oil, gas, and mineral lease made June 5, 1902. The consideration therefor was $1 recited to have been paid and agreement to pay certain royalties. There seems to have been no provision as to the duration of the rights granted, nor any express agreement as to exploration. It was provided, however, that the lease should be void if one or more wells were not drilled within two years, but not that the drilling could be delayed by the payment of commutation money. The lease contained no surrender clause. Within the two years a well was drilled to the depth of 200 feet and a vein of coal 5 feet thick was found. No further work was thereafter done. Suit was brought August 25, 1914, by the lessor for a cancellation of the lease. It was held that the plaintiff was entitled to the relief sought. There could be no question as to the right of plaintiff thereto, and this on the ground that there was a breach of an implied condition subsequent that if mineral was found it should be produced with reasonable diligence. The excuse given for the delay in production was that it was to the advantage of the lessor as well as the lessees that it be delayed, and that the delay was with his acquiescence and approval. By the latter was meant no more than that the lessor had never demanded or notified the lessee to produce. This, of course, was not sufficient to prevent a forfeiture. There is, therefore, really nothing whatever tending to support defendant's contention in the case. There is nothing in it which he can claim has this

tendency, except two statements of the court, through Miller, C. J. One of them is in these words:

"The royalty is the only consideration for the lease."

Point can be made that thereby the payment of the $1 was ignored as constituting part of the consideration of the lease. But no more need to have been intended than that the payment of the royalties was the moving cause for making the lease, which is so often expressed in such cases. By the other the reason for the conclusion reached was set forth. It is in these words:

"Such contracts have been held by this court to be unenforceable, on the ground that they are unilateral, and lack mutuality of obligation, which is essential to the validity of contracts."

In support of this the Frisbie, Young, and Murray Cases, and numerous cases from other jurisdictions, were cited. I have heretofore endeavored to show that such consideration has no application to such a case, and the decisions relied on from other jurisdictions do not hold that it does. The real and only ground for the decision was, not that the lease was invalid, but that the rights granted thereby had been forfeited by the breach of an implied condition subsequent. This comes out in a quotation made from the opinion of the Court of Appeals of Kentucky, to wit, Eastern Kentucky M. & L. Co. v. Swann-Day Lumber Co., yet to be considered here. Indeed, the case, as I shall presently show, is to a certain extent, at least, against the defendant's contention.

This exhausts the consideration of the decisions of the Court of Appeals of Kentucky relied on by defendant as supporting his position. There is nothing, as we have seen, in the Steinwender and Lowe Cases which has any tendency whatever to support it. They do not deal with cases which in any of their aspects are like the case we have. This would seem to be true, also, of the Litz Case; but possibly it is to be gathered therefrom that $1 is not sufficient consideration to validate such a contract as was involved there. Whether so or not, it is possible, if not probable, that this is to be gathered from the Murphy-Thompson Co., Noble, and Combs Cases, to which I have called attention. So far as the Frisbie, Young, and Murray Cases are concerned, there is that in them which does give occasion for the claim that they are authorities for the position that such a lease as we have here is invalid. And the King Case may be said to have this tendency, in that it approves the reasoning on which those cases, so far as they justify such a position, was based.

Before considering whether, because of those decisions, I should hold the lease in question here invalid, I proceed to a consideration of the other Kentucky decisions heretofore referred to as having a bearing on the question before me. And I would consider first the Armitage v. Mt. Sterling Oil & Gas Co., Bay State Pub. Co. v. Penn L. Co., Flanagan v. Marsh, Breckenridge Asphalt Co. v. Richardson, and Eastern Ky. M. T. Co. v. Swann-Day Lumber Company Cases. The first three involved oil and gas leases, the fourth one an asphalt lease, and the last one a mineral and timber lease. No one of them

contained a surrender clause. The suits in the first four were suits to cancel the leases. The relief sought was denied in the first of the four, and granted in the other three. The suit in the last one was brought by the lessee, asserting rights under the lease. The relief sought by him was denied. In no one of the last four cases was the lease held invalid. The plaintiff, in the first three of them, was granted the relief sought, and in the last one denied such relief, because he had forfeited the rights granted him by breach of an implied condition subsequent as to exploration and production. These four cases witness how keen the Court of Appeals of Kentucky is to imply a condition subsequent in such instruments that reasonable diligence shall be used in exploration and production, in the absence of an express provision on the subject, by which to secure to the lessor the benefits to accrue to him under them, and which were the moving cause for the making of the lease, and to enforce such condition. The Armitage Case witnesses that, if the parties have made an express agreement on the subject of exploration and production, that court will uphold and enforce it. In that case the agreement was that the lessee was to commence operations in the county in which the land lay in 6 months, and sink a test well on that land in 3 years, and that if such well was not so sunk the lease should be void. It was held that the lessee had 3 years in which to sink a well, and his rights under the lease were not forfeited by a failure to so begin operations in 6 months; it not being provided that they should be forfeited if he failed so to do.

This brings us to the other two cases, to wit, Schamberg v. Farmer and Monarch Oil & Gas Co. v. Richardson. They are alike, in that in each the lease, which was an oil and gas lease, contained a surrender clause, and notwithstanding such clause the lease was held valid. The Farmer Case was a suit by a vendor of land by deed of general warranty to recover part of the purchase money. The defense was based on an outstanding oil and gas lease made by the vendor before the execution of the deed. The question in the case was whether the lease was valid. It was treated as an incumbrance upon the land, if valid. The grant was for a term of 15 years and as long as production continued, and it was provided that the lessee had the right to annul the lease by failure to comply with its terms and to remove all machinery and fixtures. The report states that the consideration for the lease was a "sufficient consideration." An examination of a copy of the lease, procured from the records of the Court of Appeals, discloses that the consideration was $1, the receipt of which was acknowledged, and certain agreements on the part of the lessee. Those agreements were to drill one or more test wells in 12 months, to commence operations and complete one well within 2 years after finding oil in paying quantities in one of the test wells, or thereafter pay as rent 10 cents per acre yearly in advance until such well was completed, or lessee elected to cancel the lease by nonpayment of rent, and to pay certain royalties. It was claimed on behalf of the plaintiff, who was appellee in the appellate court, that the lease was invalid, and hence not an incumbrance upon the land. To this the court, through Landes, J., said:

"We do not concur in the contention of counsel for the appellee that the lease was invalid for the want of mutuality, and that for that reason it created no incumbrance on the land. It was a valid contract, and created an incumbrance. But, defense having been made on the ground that the incumbrance was still existing, it devolved upon the appellants to properly allege it, and prove it, if denied. Provisions were made in the lease, which we have quoted, for a termination of it by the lessees, by electing not to pay rent for the land, when the conditions existed requiring them to pay rent, and for a forfeiture of it by the failure of the lessees to complete one of the test wells stipulated for within 12 months from the date of the lease. The facts of the case affecting the lease in such a way as either to put an end to or to prolong its existence must have been within the knowledge of the appellants, one of whom, at least, was in possession of the land. And if, under the facts, the lease was still in force, in order to avail themselves of it as a defense to the action it devolved on the appellants to allege the facts, and to prove them if denied by the appellee. The general statement, made in their pleadings, that the lessees had fulfilled the conditions of the lease, and that the incumbrance still existed, was not sufficient, as it was but a conclusion of the pleader. Besides, the general statement that the conditions had been fulfilled being denied, no proof was introduced to sustain it. And so the record contains nothing upon which the court below would have been justified in granting any relief to the appellants against the note sued on."

This case was cited with approval in the Armitage Case.

In the Richardson Case the grant, which was made October 10, 1898, was for 20 years or so long as oil, gas, or other minerals were obtained in paying quantities, and it was provided that the lessee should have the right at any time to surrender the lease and thereby be fully discharged from any and all damages arising from any negligence or nonfulfillment of the contract. The consideration for the grant was $1 in hand paid and covenants and agreements contained therein. Amongst his agreements was one to commence a well within one year or pay thereafter an annual rental of $16 payable annually. No well was ever commenced, but the lessee had paid the annual rental for 7 years, paying it up to October 10, 1906. Suit was brought prior to this time by the lessor to cancel the lease, and it was held that the lease was valid, and he was not entitled to such relief. No question was made as to whether the validity of the lease was affected by the surrender clause, and hence the question was not directly passed on, but the necessary result of the conclusion reached was that it was not affected thereby. The court, through Carroll, C. J., said:

"This contract, however, can be so construed as to effectuate the intention of the parties in a manner that will do justice to the lessor, as well as the lessee, without arbitrarily canceling it, as was done by the judgment of the lower court, and this result may be accomplished by requiring the lessor to give notice to the lessee that he will not accept the annual rentals and permit his land to remain idle and undeveloped, but will require the lessee to execute the contract according to the intention in the minds of the parties at the time it was made by commencing in good faith its development, and, if the lessee does not, within a year from the notice, in good faith commence a well on the premises, the lessor at the expiration of that time may have the lease forfeited. The lessor in this contract did not at any time exact or demand of the lessee that it commence operating for oil or gas, but accepted the annual rentals paid in full discharge of the obligations of the contract, although at the end of any rental period he might have declined to accept rent and required the lessee to begin operations for oil or gas. We therefore conclude that, under the facts stated in the answer, which are to be accepted as true, the court erred in canceling the lease. The rent paid and accepted uncondi-

tionally by the lessor satisfied the demands of the contract up to that date, and the lessee had the right to assume that the lessor was satisfied to receive the annual rentals in lieu of the development of the land."

And in the King Case, the last of the cases in Kentucky dealing with oil and gas and similar leases, this Richardson Case was distinguished therefrom, and not only was it not disapproved, but it was expressly approved. The court, through Miller, J., said:

"The cases sustaining the ruling in the Richardson Case are collected in the note in 11 L. R. A. (N. S.) 419."

And again:

"In the Richardson Case the lease provided for a royalty of one-tenth of the profits to the lessor, or an annual rental of $16 in lieu thereof; and the rental was regularly paid and accepted as a satisfaction of the requirements of the lease. Under those facts the court held that, if the lessors in that case preferred to require the lessees to develop the land instead of paying the annual rental, they had the right to do so upon giving a reasonable notice of their election. That ruling was entirely proper under the facts of that case."

It is true that no more there than in the Richardson Case itself was note taken of the existence of the surrender clause, but notwithstanding its existence the lease was held valid in that case, and this ruling was approved in this.

We have now covered all matters preliminary to the decisive question in this case, in the light of which it should be disposed of, and are now ready to come to close quarters with it. That question is: What is the law of this state, as determined by the highest court thereof, as to the validity of the leases involved herein? Does, or not, according thereto, the surrender clause contained in them render them invalid, as contended by defendant? If it were not for the Farmer and Richardson Cases, just considered, possibly one should hesitate to say that the law of this state, as so declared, is not as defendant contends it to be. I am not persuaded that, even in that contingency I would have to say that it is. We have seen that upon principle such a clause does not render the lease invalid, and that the overwhelming weight of authority, to wit, that in the great oil and gas producing states of Pennsylvania, West Virginia, Ohio, Indiana, Illinois, and Kansas, is to this effect, and the Supreme Court of the United States has given its sanction to this position. In addition to this, the Supreme Court of Louisiana has taken note of the fact that such is the law where the common law prevails. Nowhere is it held otherwise, except in the state of Texas, and that in the opinions which show on their face, as I have said, that the question was not gone into deeply. The only decisions which can be relied on as holding in this state that such a lease is invalid are the Frisbie, Young, and Murray Cases. In the Frisbie and Young Cases the question did not belong in them. It was gotten into the Frisbie Case by assuming a fact which it was held did not exist, to wit, that the lessee, by accepting the option, had not agreed to explore and produce. In the Young Case the sole question was whether the lessee had agreed to explore, and, if he had not, pay rental—not what rights the lessee had under the lease because he had not so agreed. And in the Murray Case, though the question was in

it, it was overshadowed by the fact that beyond all question the lessee had forfeited all rights under the lease by failure to explore and produce, and the lease had been obtained by fraudulent representation.

The position taken was in all three cases based upon the proposition that in the case of such leases there was a want of mutuality of obligation, and in the Murray Case upon the additional proposition that a valid lease, terminable at the will of the lessee, is likewise terminable at the will of the lessor. Neither of these two propositions were true, as heretofore shown. The court in neither one of the cases had the considerations favoring the validity of such a lease or the state of authority on the question elsewhere presented to it, and I recoil from the idea that upon a presentation thereof it would hold that the lease was invalid. Then upon the question involved in that as to the validity of such a lease, to wit, as to whether $1 is a sufficient consideration to meet the requirement of the common law that a valuable consideration is essential to the validity of a contract, I am not disposed to think that the Court of Appeals is finally committed to the position that it is not, thereby constituting this state the only jurisdiction in which the common law prevails where such is the case. I have heretofore directed attention to the note in Ann. Cas. 1912B, 360, 363, to the case of Lovett v. Eastern Oil Co. setting forth the law on this subject elsewhere. On the same subject see 6 R. C. L. 678.

The question is not whether a court of equity will refuse to specifically enforce a contract where $1 is the sole consideration therefor, but whether in a court of law an executed contract will be held invalid solely on the ground that such is the case. The Court of Appeals of Kentucky, in the early case of Toncra v. Henderson, supra, held that it would not. The Litz and Murphy-Thompson Co. Cases were suits for specific performance, and the question as to whether the validity of the option was affected by the consideration being only $1 was not involved in either, as, conceding that it was not, the option had been accepted before it was withdrawn. In the Combs Case, though it was not a suit for specific performance of the option there involved, it was sufficient that it could not be specifically enforced because of inadequacy of consideration in its bearing on whether the deed for the timber which was sought to be canceled had been obtained by fraud. It is true that in the Noble Case the suit was at law to recover damages for breach of the option. But it was based on the Murphy-Thompson Co. Case, without noting that in that case the suit was for specific performance.

[12] The most, however, that these cases can stand for is that $1 is an inadequate consideration for an option to purchase real estate, and that to such an extent as to invalidate the option. They do not go the length of justifying the position that $1 is not an adequate consideration for an oil or gas lease, where there is no covenant on the part of the lessee to explore and produce. Such a lease calls for a considerable expenditure of money on the part of the lessee in exploration, all of which will go for nothing in the event of a failure to find oil or gas. The lessee takes the whole of this risk. The lessor takes none of it. The lessee pays the $1 for the privilege of taking

this risk. That there is no covenant on the part of the lessee to explore or to produce adds nothing to the value of the right, save in giving the lessor a right to sue for damages if he does not so do. But what the lessor is after is, not damages, but the finding and producing of oil and gas, and, though this is not secured to him by a covenant, it is by an implied condition subsequent. In addition to this $1 is the recognized consideration for such leases everywhere. So it is that, if the Farmer and Richardson Cases had never been decided by the Court of Appeals, I would hardly feel constrained to hold that the law in Kentucky on the question involved here is other than it should be, and than it is in almost every other jurisdiction. But, in view of those decisions, the first of which was cited with approval in the Armitage Case, and the second in the King Case, the last decision of that court involving an oil and gas lease, there is no room for possible doubt as to how I should hold. I therefore hold that the Huntsman leases are valid, and the plaintiffs are entitled to the injunction sought.

There is also involved in this case the question as to the ownership of the surface of the Pitts land. I have considered this matter carefully, and conclude that plaintiffs are the owners thereof. It is not necessary that I do more than state my conclusion as to this.

The plaintiffs will prepare and submit a decree.

⬤⟿For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes